UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 20-21121-LMI

IN RE:                                            CHAPTER 13

WALTER GARCIA,

      Debtor.

_____/

## MOTION FOR RELIEF FROM STAY AND CO-DEBTOR STAY

**(Expedited Relief is Requested as the Property securing Creditor's debt is vacant and uninsured)**

COMES NOW, A&S Capital LLC, ("Creditor") by and through its undersigned attorney, and moves the Court pursuant to 11 U.S.C. Sections 362(d)(1)(2) and 1301 and Bankruptcy Rule 4001, for relief from Stay and the Co-Debtor stay, and states:

1. The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a) and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure and the laws of the United States of America.

2. The Debtor(s) listed above (the "Debtor(s)") filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code on October 13, 2020.

3. On or about May 22, 2018, 2501 Del Lago LLC, a Florida limited liability company hereafter "Borrower," executed and delivered a promissory note to Creditor in the principal amount of $3,225,000.00 and a mortgage securing same. Exhibit "A"

4. On or about May 22, 2018, Debtor executed a personal guaranty of the debt. Exhibit "B"

5.  Creditor owns and holds the note, mortgage and the other loan documents which are in default.  The property securing the debt is owned by Borrower and not the Debtor. Creditor's address for payment is: 2999 NE 191 Street #808 Miami, FL 33180.

6.  Borrower is currently in possession of the property secured by the note and mortgage, which property is described as follows:

> Lot 9, DEL LAGO ISLE, according to the Plat thereof, as recorded in Plat Book 42, at Page 2, of the Public Records of Broward County, Florida.

> a/k/a 2501 Del Lago Drive, Ft. Lauderdale, FL 33316

7.  On September 29, 2020 Creditor obtained a Final Judgment of  Foreclosure against Borrower in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, in the amount of $3,192,406.00 (the "Judgment").  Exhibit "C"  Said Judgment confirms Creditor's interest in the Co-Debtor(s) property located at  2501 Del Lago Drive, Ft. Lauderdale, FL 33316 and as legally described in the attached Judgment.

8.  The estimated value of the property is $2,800,000.  The basis for the estimated value is based upon an appraisal of the property.   Exhibit "D"

9.  Creditor is entitled to relief from the Stay and the Co-Debtor stay, and in support hereof affirmatively states that Debtor is not the owner of the subject property, Creditor is not adequately protected as there is no equity in the property, Borrower and Debtor are not making adequate protection payments to Creditor, **and Borrower and Debtor have failed to maintain insurance on the property as required by the terms of the mortgage.  Moreover, the property is vacant, which condition puts Creditor's collateral at increased risk of loss.**

10.  Finally, stay relief is appropriate as Debtor is over the debt limit for Chapter 13 as set forth in 11 USC §109(e) and cannot confirm a plan of reorganization thereunder.

WHEREFORE, Creditor, A&S Capital LLC, prays the Court enter an order granting it relief from the Stay and Co-Debtor stay and waiver of the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001 (a)(3) so it may enforce its state court rights against the Property in rem, and its rights against Borrower/Co-Debtor, 2501 Del Lago LLC.

I HEREBY CERTIFY THAT I AM ADMITTED TO THE BAR OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, AND I AM IN COMPLIANCE WITH THE ADDITIONAL QUALIFICATIONS TO PRACTICE IN THIS COURT SET FORTH IN LOCAL RULE 910(A).

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via regular mail on October 20, 2020 to:  Walter Garcia, 900 Biscayne Blvd., Apt. 5602, Miami, FL 33132 and 2501 Del Lago LLC, c/o Walter Garcia, Manager, 900 Biscayne Blvd., Apt. 5602, Miami, FL 33132 and the following parties were served by Notice of Electronic transmission on the 20th day of October, 2020 to: Ben R. Hetfeld, Esq., Crexent Business Center, 6625 Miami Lakes Drive #310, Miami Lakes, FL 33014; and Nancy K. Neidich, Chapter 13 Trustee, P.O. Box 279806, Miramar, FL 33027.

SAX, WILLINGER & GOLD
Attorney for Creditor A&S Capital LLC
600 S. Andrews Avenue
Suite 401
Ft. Lauderdale, FL 33301
(305) 591-1040
E-mail: sgold@swglawyers.com

 /s/ Stuart M. Gold
STUART M. GOLD, ESQ.
Florida Bar No.: 265421

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 20-21121-LMI

IN RE:                                                    CHAPTER 13

WALTER GARCIA,

           Debtor.
_____/

**ORDER GRANTING RELIEF FROM STAY AND CO-DEBTOR STAY**

THIS CAUSE came on to be heard on _____, 2020 at _____ a.m., upon the

Motion for Relief from Stay and Co-Debtor Stay filed by Creditor, A&S CAPITAL LLC

[ECF    ], and the Court based on the record, it is

ORDERED as follows:

1.  Creditor's Motion for Relief from Stay and Co-Debtor Stay be, and the same is hereby

granted in Order that Creditor may commence or conclude foreclosure proceedings upon the

Page 1 of 2                                    Proposed Order

following described property:

   Lot 9, DEL LAGO ISLE, according to the Plat thereof, as recorded in Plat Book 42, at Page 2, of the Public Records of Broward County, Florida.

   a/k/a 2501 Del Lago Drive, Ft. Lauderdale, FL 33316

   2.  This Order is entered for the purpose of allowing Creditor to obtain an in rem

judgment against the property and to pursue its claims against the Co-Debtor 2501 Del Lago LLC

Creditor shall not seek nor obtain an in personam judgment against the Debtor.

   3.  The 14 day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3) is

waived so that Creditor may forthwith enforce its lien rights in State Court by proceeding with its

action to foreclose on the property which secures the mortgage.


Copies furnished to:

Stuart M. Gold, Esq.
600 S. Andrews Avenue, Suite 401
Fort Lauderdale, FL 33301
Telephone: (305) 591-1040
Email: sgold@swglawyers.com

*Stuart M. Gold. is hereby directed to provide a conformed copy of this Order to all parties-in-interest and to file a Certificate of Service as to same)*


# # #

Page 2 of 2

EXHIBIT "A"

RE18232

## BALLOON NOTE

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE.**

**$3,225,000.00**

**May____, 2018**

**2501 DEL LAGO, LLC**, a Florida limited liability company , whose post office address is 900 Biscayne Blvd Suite 5602 Miami, FL 33132( Singular "Maker", Collectively "Makers"), promise to pay **THREE MILLION TWO HUNDRED TWENTY FIVE THOUSAND DOLLARS ($3,225,000.00)** with Interest at the Applicable Interest Rate defined below to the order of **A & S  C A P I T A L  L L C**, a Florida limited liability company, whose address is 5900 Collins Ave 807 Miami Beach, Fl 33140 ("Holder") or at such other place as the Holder hereof may designate.

Interest on principal will accrue from date of funding at the rate of 1/360th of annual interest for each day  that principal is outstanding; provided, however, in no event shall interest be due at the rate in excess of  the maximum permissible legal rate.

Provided there is no default under the Loan (as defined below), the "Applicable Interest Rate" shall mean the following:

(a)    From the date of this Note through the Maturity Date (as defined below), the "Applicable Interest  Rate", shall mean a fixed interest rate of 10% per annum.

Interest only under this Note (this "Note") shall be payable as follows:

(a)    Commencing on July 1ˢᵗ, 2018, and on the 1ˢᵗ day of each  succeeding month during the term  of this Note through the "Maturity Date", Makers shall pay to the Holder, interest only monthly payments commencing in the amount of $23,333. 34 which shall be based on the principal amount of $2,800,0000.00, representing the initial disbursement of loan proceeds in accordance with the Construction Loan Agreement executed of even date herewith ("Construction Loan Agreement").

(b)    The Lender shall recalculate the interest only monthly payment amount, upon each additional disbursement in accordance to the Construction Loan Agreement, based on the adjusted principal amount of the Loan.

(c)    If the Note Holder has not received the full amount of any monthly payment due by the Fifth (5ᵗʰ) calendar day after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be 10.00% of my overdue payment.  I will pay this late charge promptly and within 3 days but only once on each late payment. The late charge shall be added to principal if not paid timely. Payments returned by the bank upon which drawn shall be charged at $100.00 but said charge shall not abate or affect litigations hereunder. Failure to make any monthly payment past the 15ᵗʰ day after it is due, shall be considered a Maker's default under this note and subject to the provisions below.

(d)    The Note Holder shall charge an Origination Fee of three (3%) of the total Loan ($3,225,000.00) amount at closing.

All principal, interest and unpaid costs shall be due and payable on June 1, 2019 (the "Maturity Date"),  unless sooner accelerated pursuant to this Note (as defined below).

All payments shall be applied first to any outstanding costs and fees of Holder, then to accrued interest  and

then to principal.

Provided there is no default under the Loan, the principal may be prepaid at any time in whole or in part, without premium or penalty after a period of six (6) months from the date of this Note. Any prepayment which is not expressly exempt from the premium or penalty under the provisions of this paragraph must be accompanied by a prepayment charge ("Prepayment Penalty") equal to the Applicable Interest Rate of the amount of principal being prepaid. The Prepayment Penalty shall be due and payable on each prepayment during the applicable time period.

As used in this instrument, the term "Collateral" shall refer to all real and personal property that is encumbered to secure any obligation of the Loan (the "Property"), including without limitation the real and personal property encumbered by that certain MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT given by Makers to Holder of event date herewith (the "MORTGAGE") that secures this Note.

As used in this instrument, the term "Obligations" shall refer to the indebtedness represented by this Note and all modifications, renewals and substitutions hereof, all obligations of the Makers under the documents (the "Loan Documents") which evidence and secure the obligations of the loan evidenced by this Note (the "Loan"), and all other claims of every nature and description of the Holder against the Makers in connection with the Loan whether present or future, contracted with or acquired by the Holder, and whether joint, several, absolute, contingent, matured, unmatured, liquidated, unliquidated, or direct or indirect.

As security for payment of this Note and of all of the Obligations, Makers grant to the Holder a continuing lien and security interest in all of the Collateral.

The happening of any of the following events shall constitute a default hereunder after the applicable notice and cure period: (1) a failure of any Maker to pay in full any installment or other sum payable hereunder promptly when it becomes due; (2) failure of any Maker to perform when required any agreement hereunder or under any of the Loan Documents; (3) failure of any Maker to pay or perform in full when due any indebtedness, obligation, or liability to the Holder whatsoever; (4) the Holder learns that any warranty, representation, certificate or statement of any Maker (whether contained in this Note or not) pertaining to or in connection with this Note or the Loan or credit evidenced by this Note, is not true or is in dispute, including but not limited to any representation(s) made to the Note Holder by the Maker that the Collateral is an investment property and not the Maker's primary or secondary residence; (5) any Maker becomes insolvent or any insolvency proceedings (as said terms "insolvent" and "insolvency proceedings" are defined in the Uniform Commercial Code of Florida) are instituted or made by or against any Maker, or application is made for the appointment of a receiver for any Maker or for any of the assets of any Maker; (6) the entry of a judgment against any Maker; (7) the issuing of any levy, attachment or garnishment, or the filing of any lien against any property of any Maker; (8) the determination by the Holder that a material adverse change has occurred in the financial condition of any Maker (a) from the conditions set forth in the most recent financial statement of such Maker heretofore furnished to the Holder, if any, or (b) from the financial condition of such Makers as heretofore most recently disclosed to the Holder in any manner, if any; (9) failure of any Maker to do all things necessary to preserve and maintain the value and collectability of the Collateral, including but not limited to the payment of real estate taxes and premiums on policies of insurance on the due date; (10) any Transfer (defined below) of any of the Collateral without prior written consent of the Holder; (12) the dissolution, merger, consolidation, or reorganization of any Maker or (13) violation by any Maker of any legal requirement applicable to the Loan or any of the transactions evidenced by the Loan Documents; (14) Maker (any Manager, Officer, or Member of the Maker) occupying the property either as Maker primary residence or Investment property.

A "Transfer" of Collateral shall be deemed to have occurred: (i) if any of the Collateral or any part hereof or interest therein shall be sold, conveyed, disposed of, alienated, hypothecated, leased (except as expressly otherwise permitted by the Loan Documents), assigned, pledged, mortgaged, further encumbered or otherwise transferred, (ii) if the owner of such Collateral shall be divested of its title to such Collateral or any interest therein, in any manner or way, whether voluntarily or involuntarily; or (iii) if more than 10% of

the Equity Interests (defined below) owned by the Holders ("Collateral Owner") shall be sold, conveyed, disposed of, alienated, hypothecated, assigned, pledged, further encumbered, or otherwise transferred (except as expressly permitted pursuant to any of the other Loan Documents), either voluntarily or involuntarily. As used in this instrument, the term "Equity Interests" shall refer to the shares of capital stock of a corporation, the partnership interests of a general or limited partnership or a joint venture, the membership interests of a limited liability company, the beneficial ownership of a trust, or any other similar right of ownership, control, or management of a business association.

Notwithstanding anything herein to the contrary, Holder agrees, by acceptance of this Note, to provide Makers with the following written notice and cure periods prior to Maker's default: (a) for a period of fifteen (15) days for the failure of the Makers to make a payment when due hereunder, and (b) except as provided below, for a period of thirty (30) days after written notice to Makers in the event of any other default by Makers in any Obligation hereunder. Notwithstanding anything to the contrary in the preceding sentence, no forbearance shall be given as to any default caused by: (i) any Transfer of any of the Collateral without prior written consent of Holder; (ii) the untruth when made, in whole or material part, of any warranty, representation certificate or statement of Makers pertaining to the Loan; or (iii) the filing of any voluntary bankruptcy, receivership or insolvency proceedings by Borrower or Makers. Any such notice and cure period given hereunder shall not deny or in any way mitigate the occurrence of a default, unless Makers, within the applicable notice and cure period, cures such default to Holder's satisfaction, in which event the Loan shall thereupon be reinstated and restored to good standing in all respects, including the interest rate hereon, effective as of the date of the default.

Upon the happening of any default as defined herein: (1) the entire amount of this Note remaining unpaid, less the amount of any prepaid interest or discount and any rebates required by law, shall, at the option of the Holder and without notice or demand, become due and payable forthwith or thereafter; (2) the Holder may at its option, thereupon or thereafter declare all other Obligations, or any of them selected by the Holder (notwithstanding any provisions thereof), immediately due and payable without demand or notice of any kind (but with such adjustments, if any, with respect to any interest or other charges as may be provided for in the promissory note or other writing evidencing such Obligation); (3) The Holder shall have the right to have the Property reappraised at Maker's expense; and (4) the Holder shall have and may exercise without demand any and all of the rights and remedies granted to a secured party upon default under the Uniform Commercial Code of Florida, or otherwise available to the Holder (including those available under any written instrument in addition to this Note relating to any of the Obligations or any security thereof) and, without limiting the generality of the foregoing, the Holder shall have the right, immediately and without further action by it, to set-off against this Note all money owed by the Holder in any capacity to each or any Makers, whether or not due, and also to set-off against all other Obligations of each Makers to the Holder all money owed by the Holder in any capacity to each or any Makers and the Holder shall be deemed to have exercised such right of set-off and to have made a charge against any such money immediately upon the occurrence of such default or other event even though such charge is made or entered on the books of the Holder subsequent thereto.

In no event and under no circumstances shall the Holder be entitled hereunder to unaccrued or unearned interest or other charges. In the event of any default hereunder, after deducting any paid and unaccrued or paid and unearned interest from the principal balance then due, the then unpaid principal balance hereof shall bear the annual interest of Eighteen Percent (18%) (the "Default Rate"). In no event and under no circumstances shall there be due hereunder, nor shall the Holder be entitled hereunder to receive at any time, any charges not allowed or permitted by law or any interest or interest rate in excess of the maximum allowed by law. In the event that the amount of any charge or payment due hereunder shall create or shall be deemed to create an interest charge in excess of the maximum permissible legal rate, then the charge of any such excess amount shall be deemed unenforceable and void and its collection shall be waived, without affecting the remainder of the Obligations evidenced hereby, and any such excess amount which may have been paid to the Holder shall be refunded.

In the event that subsequent to the stated maturity hereof the Holder makes an advance for any of the purposes provided for or permitted herein, the provisions of this Note shall be applicable with respect to such advance in all respects as if such advance had been made prior to maturity.

In the event the Holder shall be required at any time to pay additional documentary stamp tax, intangible tax, or other taxation with respect to all or part of the Loan or any other transaction contemplated or evidenced by this Note or other Loan Documents, Makers shall reimburse the Holder immediately for all such costs, including any interest and penalties with respect thereto.

Provided there is no default under the Loan, the Maker, at its sole discretion, shall have two options to extend the maturity of this Note for two additional twelve (12) month terms by (i) providing 60 days written notice mailed to the Holder at the address provided herein prior to the expiration of the current twelve month term and (ii) paying to Holder an origination fee of 1% of the loan amount for each twelve month extension. The interest rate and/or payment terms shall remain the same during each twelve month extension.

The Holder, jointly or separately, may assign their interest on this Note to a third party at their sole discretion, prior previous written authorization of the Makers.

The Holder authorizes the Servicer to subrogates upon the interest of any individual Holder on this Note.

With respect to any and all Obligations, the Makers waive the following: (1) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold any Makers liable on any Obligation after a default; (2) any further receipt for or acknowledgment of the Collateral now or hereafter deposited or statement of indebtedness; (3) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Holder and any Makers shall be adverse parties. The Makers agree that any Obligations of any Makers may, from time to time, in whole or in part, be renewed, extended, modified, accelerated, compromised, discharged or released by the Holder, and any Collateral, lien and/or right of set-off securing any Obligations may, from time to time, in whole or in part, be exchanged, sold, or released, all without notice to or further reservations of rights against any Makers and all without in any way affecting or releasing the liability of any Makers. The Makers agree to pay all taxes and assessments levied on or with respect to the Obligations, this Note, and any Collateral, including but not limited to intangible and documentary stamp taxes, and all filing fees and taxes and all costs of collecting or securing or attempting to collect or secure any Obligations, including reasonable attorneys' fees, whether or not involving litigation and/or appellate proceedings.

The Holder shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by the Holder. All rights and remedies of the Holder under the terms of this Note and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently. The Makers agree that the Holder shall be entitled to all the rights of a holder in due course of a negotiable instrument. Any provision of this Note which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof. The Holder shall have the right unilaterally to correct patent errors in this Note and to fill in any blank spaces herein so as to conform to the terms upon which the loan evidenced hereby is made.

The provisions of this Note are binding on the heirs, executors, administrators, assigns and successors of the Makers and shall inure to the benefit of the Holder, its successors and assigns. This Note is executed under the seal of the Makers.

Makers acknowledge and agree that Holder may sell, assign, pledge, encumber, or otherwise transfer all or any portion of its interest in this Note, the obligations evidenced hereby, and the documents evidencing and securing those obligations, and that in connection with any such proposed transfer, Holder may disclose to the proposed purchaser any or all information in its files as to the Loan evidenced by this Note, and as to Makers.

This Note and the other Loan Documents constitute and evidence the complete understanding between the Holder and the Makers. All prior and contemporaneous discussions between the Holder and the Makers,

including all representations and promises by the Holder, whether oral or written, are included in and merged in the Loan Documents. Any modification thereof hereafter which is not in writing and signed by the Holder and the Makers shall be void, except that the Holder may in its sole discretion extend the maturity of the Loan evidenced by this Note for a term specified in a written notification mailed to the Makers at its address shown on the Holder's records. The Holder may rely on the information, instructions, or other communications (including requests for and directions concerning loan advances) given to the Holder by Makers

Notwithstanding the fact that a default hereunder may not exist, the Holder may allow additions to, reductions or releases or exchanges of, or substitutions for the Collateral or any part thereof.

The Holder shall not be obligated to resort to any Collateral but, at its election, may proceed to enforce any of the Obligations in default against Makers.

All notices and other communications under this Note shall be in writing. All written notices and communications shall be sent by registered or certified mail, postage prepaid, return receipt requested, by reputable overnight courier, freight prepaid, or delivered by hand. All notices and other communications under this Note shall be given at the following addresses and the attention of the following persons:

    (i)    If to the Makers:
            Name: 2501 DEL LAGO, LLC
            Address: 900 BISCYANE BLVD SUITE 5602 MIAMI, FL 33132

            Electronic Email:

    (ii)    If to the Holder:
            Name: A&S Capital LLC
            Address: 5900 Collins Ave # 807
            Miami Beach, FL 33140

or at such other address or fax number or to the attention of such other person as the party to whom such information pertains may hereafter specify for the purpose in a notice to the other specifically captioned "Notice of Change of Address". All notices shall be deemed to be delivered upon receipt or refusal of receipt.

Any legal suit, action or proceeding against Makers arising out of or relating to this Note, any Loan Document or the Loan shall be instituted in any federal or state court in Broward County or Broward County, Florida, and Makers waive any objection which it may now or hereafter have to the laying of venue of any such suit, action or proceeding, and Makers hereby irrevocably submit to the jurisdiction of any such court in any suit, action or proceeding.

No invalid provision of this Note shall affect or impair any other provision. Makers acknowledge receipt of a completed copy of this Note.

In addition to and without limitation of any remedies of the Holder, and in addition to all other sums due hereunder, the Holder may collect a late charge not to exceed an amount equal to five percent of any installment of principal, interest, or other sums which is not paid within fifteen (15) days of the due date thereof to cover the extra expense involved in handling delinquent payments.

THE MAKERS AND, BY ITS ACCEPTANCE HEREOF, THE HOLDER, EACH HEREBY WAIVE (1) ALL RIGHTS TO RELY ON OR ENFORCE ANY ORAL STATEMENTS MADE PRIOR TO,

CONTEMPORANEOUSLY WITH OR SUBSEQUENT TO THE SIGNING OF THIS PROMISSORY NOTE; AND (2) THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS PROMISSORY NOTE, OR WITH RESPECT TO DEALINGS BETWEEN THE HOLDER AND THE MAKERS CONCERNING ANY COURSE OF CONDUCT, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE HOLDER TO PROVIDE CREDIT TO THE MAKERS.

Signed, sealed and delivered in the presence of:

Unofficial Witness

2501 DEL LAGO, LLC, a Florida limited liability company

By: _____
    WALTER GARCIA, Authorized Member



STATE OF FLORIDA     }
                     }   ss:
COUNTY OF MIAMI-DADE }

The foregoing instrument was acknowledged before me this 22 day of May, 2018, by Walter Garcia, as Authorized Member of 2501 Del Lago, LLC, a Florida limited liability company. He is personally known to me or has produced Driver's License as identification.

_____
Notary Public, State of Florida

Notary Public State of Florida
Maria E Del Sol
My Commission FF 978302
Expires 05/02/2020

Prepared by and return to:
Valeria Schvartzman, Esq
Law Office of Valeria Schvartzman PA
12550 Biscayne Blvd Suite 406
North Miami, FL 33181

RE18232

THIS IS A BALLON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $3,225,0000.00 TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT

THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, AND SECURITY AGREEMENT (this "Mortgage"), executed and delivered as of May 22 , 2018, by 2501 DEL LAGO, LLC, a Florida limited liability company whose address is 900 Biscayne Blvd Suite 5602 Miami, FL 33132(Collectively called "Mortgagor"), to A&S Capital LLC, a Florida limited liability company, whose address is 5900 Collins Ave #807, Miami Beach, FL 33140 (hereinafter called "Mortgagee"), which terms Mortgagor and Mortgagee, shall include all natural and artificial persons described as Mortgagor and Mortgagee, and shall be deemed to extend to, bind and benefit their respective heirs, executors, administrators, successors, legal representatives and assigns:

### WITNESSETH:

For good and valuable considerations, including the sum named in the promissory note dated May 22 , 2018 from Mortgagor to Mortgagee in the principal amount of $3,225,000.00 (hereinafter together with all renewals, extensions, substitutions, increases and other modification thereof called the "Note"), which provides for monthly payments with the full debt if not paid earlier, due and payable on June1st, 2019, the Mortgagor does hereby grant, bargain, sell, alien, remise, release, convey and confirm unto the Mortgagee all that certain real property which the Mortgagor now owns, situated in Florida and described more particularly in Exhibit " A" attached hereto and made part hereof, and all structures and improvements now and/or hereafter located thereon and owned by the Mortgagor, the rents, issues and profits thereof, all furniture, furnishings, fixtures and equipment now and/or hereafter located thereon, and also all gas and electric fixtures, heaters, air conditioning equipment, machinery, motors, bath tubs, sinks, water closets, water basins, pipes, faucets, and other plumbing and heating fixtures, refrigerator equipment, venetian blinds, which are now or may hereafter pertain to or be used with, in or on said premises and owned by the Mortgagor, and which, even though they are detached or detachable, are and shall be deemed to be fixtures and accessions to the freehold and a part of the realty, and all additions thereto and replacements thereof (which real property, improvements and personality are hereinafter collectively called the "Property"); all present or future deposits, accounts, security deposits, contracts, contract rights, instruments, permits, licenses, choses-in-action, insurance and condemnation proceeds and other general intangible rights of any nature whatsoever now or hereafter dealing with, affecting or concerning the Property, any portion thereof or any interest therein, and now or hereafter existing, acquired or held by Mortgagor, and derived, arising from or relating to any operation, development, ownership or management of the Property or businesses or concessions conducted on the Property, including, without limitation: (i) any agreements for the provision of utilities to all or any portion of the Property, (ii) all deposits for the use of all or any portion of the Property, (iii) all revenue arising from, growing out of, or in connection with the use and/or occupancy of the Property, and all products and proceeds of the foregoing and (iv) all other items of personal property used or useful in connection with the operation of the Property with the exception of the personal property owned by tenants leasing the Property,

together with all accessories, parts, equipment and accessions now attached to or used in connection therewith or which may hereafter at any time be placed in or added to the Property, and also any and all replacements of any such property.

TO HAVE AND TO HOLD the same, together with the tenements, hereditaments and appurtenances, unto the Mortgagee in fee simple.

And the Mortgagor hereby covenants with the Mortgagee that the Mortgagor is indefeasibly seized of the Property in fee simple (or such lesser estate as may hereinafter be identified); that the Mortgagor has full power and lawful right to convey the Property in fee simple as aforesaid; that upon an event of default only after the expiration of the applicable notice and cure period it shall be lawful for the Mortgagee at all times peaceably and quietly to enter upon, hold, occupy and enjoy the Property; that the Property is free from all encumbrances except for those, if any, specifically approved in writing by Mortgagee prior to the date of full execution of this Mortgage; that the Mortgagor will make such further assurances to perfect the fee simple title to the Property in the Mortgagee as may reasonably be required; and that the Mortgagor does hereby fully warrant the title to the Property and will defend the same against the lawful claims of all persons whomsoever.

PROVIDED ALWAYS, that if all of the payments set forth in the Note shall be paid and each and every stipulation, agreement, condition and covenant of the Note, this Mortgage, any loan agreement (a "**Loan Agreement**"), and all other documents now or hereafter evidencing or securing the obligations of the loan evidenced by the Note and secured by this Mortgage (all such other documents, together with the Note and this Mortgage all as the same may hereafter be extended, increased or otherwise modified, restated or replaced, are collectively called the "**Loan Documents**"), shall be promptly performed, complied with and abided by, then this mortgage and the estate hereby created shall cease and be null and void.

And the Mortgagor does hereby covenant and agree with the Mortgagee as follows:

1.    Payment of the Note. All and singular the principal and interest and other sums of money payable by virtue of the Note and this Mortgage, or either, shall be paid promptly on the days, respectively, the same severally become due subject to any notice and cure periods. All principal, interest and unpaid costs shall be due and payable on June 1st, 2019 (the "Maturity Date"), unless sooner accelerated pursuant to this Mortgage or the Promissory Note. Provided there is no default under the Loan, the Maker shall have one option to extend the maturity of this Note for an additional six(6) month terms by (i) providing 60 days written notice mailed to the Holder at the address provided herein prior to the expiration of the current twelve month term , (ii) an acceptable appraisal in Mortgagee's sole discretion and (iii) paying to Holder an origination fee of 0.5% of the loan amount for each six month extension. The interest rate and/or payment terms shall remain the same during each six month extension.

2.    Compliance with Terms of Note and Mortgage. Each and every stipulation, agreement, condition and covenant set forth in the Note and in this Mortgage shall be performed, complied with and abided by subject to any notice and cure periods.

3.    Payment of Taxes, Assessments and Encumbrances. The Mortgagor shall pay all and singular the taxes, assessments, levies, liabilities, obligations, and encumbrances of every nature on the Property, whether prior or subordinate in lien, dignity and effect to the lien of this Mortgage, each in accordance with its respective terms, conditions and requirements, and, if the same are not paid prior to delinquency, the Mortgagee may at any time, after delinquencies, pay the same without waiving or affecting the option to foreclose or any right hereunder, and every payment so made shall become part of the indebtedness secured by this Mortgage and shall bear interest from the date of expenditure by the Mortgagee at the Default Rate (as such term is defined in the Note), until paid. All such funds, together with accrued interest, shall be paid to Mortgagee on demand.

4.    Maintenance of Insurance and Application of Proceeds.

(a)    The interest of the Mortgagor shall at all times be protected by adequate fire and multiple perils insurance covering all development and construction work, buildings, improvements, and off-site and on-site materials on the Property through a company or companies reasonably acceptable to the Mortgagee, and in an amount equal to the full insurable value of the buildings and improvements. Without limitation of the foregoing, the Mortgagee shall receive original insurance policies or the original ACORD evidence thereof, as to the fire and extended coverage insurance (including windstorm coverage), builder's risk (if applicable), liability insurance, and, when applicable, flood insurance on the Property, in amounts form and upon companies satisfactory to Mortgagee in Mortgagee's reasonable discretion, together with endorsements to the policies including but not limited to a Law and Ordinance endorsement, naming Mortgagee as the first mortgagee. Notwithstanding the foregoing, as to any improvements under construction, the fire and extended coverage insurance and the business interruption/rental loss insurance shall not be required to be obtained until substantial completion of those improvements.

(b)    All such policies shall be issued by an insurer licensed to do business in Broward County, Florida and whose claims paying ability is rated at least "A" by Standard and Poor's or A/A - VIII by A.M. Best as published in Best's Key Rating Guide. Loss under such insurance policies shall be payable first to the Mortgagee to the extent of its interest. The original policy or policies with premiums paid shall be in the possession of the Mortgagor no later than the commencement of development work, or commencement of house construction. Unless otherwise expressly provided in any other Loan Document and provided no default exists of any kind, the proceeds from any loss covered by insurance shall be applied to restoration of the Property. If the Mortgagor shall fail to cause any required insurance to be carried and paid for, the Mortgagee may place and pay for such insurance or any part thereof without waiving or affecting the option to foreclose or any right hereunder, and each and every such payment shall bear interest from date thereof at the Default Rate as defined in the Note.

5.    Waste. The Mortgagor shall permit, commit, or suffer no waste, impairment or deterioration of the Property, except reasonable wear and tear, and in the event of failure of the Mortgagor to keep the buildings constituting a portion of the Property or improvements thereon in good repair, the Mortgagee may make such repairs as in its discretion it may deem reasonably necessary for the proper preservation thereof, and the full amount of each and every such payment shall be due and payable thirty days after written demand to Mortgagor, and  shall be secured by the lien of this mortgage.

6.    Acceleration of Maturity of Note upon Default. If, following any grace, notice or cure period allowed by the Note or any Loan Agreement: (i) any of the sums of money referred to in the Note or in this Mortgage be not promptly and fully paid when the same severally become due and payable; or (ii) each and every stipulation, agreement, condition and covenant of the Note, this Mortgage or the other Loan Documents, is not promptly and fully performed, complied with and abided by; then: (a) all obligations under the Note and under this Mortgage, including but not limited to sums advanced by the Mortgagee to protect its security or lien position in the Property or any of its rights under this Mortgage, shall immediately  and without further notice to Mortgagor bear interest at the Default Rate as defined in the Note; (b) the sum mentioned in the Note, together with all other obligations under the Note, this Mortgage and the other Loan Documents, shall become due and payable forthwith or thereafter at the option of the Mortgagee, as fully and completely as if the full principal amount here secured were originally stipulated to be paid on such date, anything in the Loan Documents or herein to the contrary notwithstanding; and (c) Mortgagee shall be entitled to exercise all rights and remedies available at law and in equity, including the foreclosure of this Mortgage.

7.    Foreclosure of Lien. If proceedings to foreclose or enforce any mortgage or other lien of any kind encumbering the Property should be instituted, the Mortgagee may, at its option, immediately or thereafter declare this Mortgage and the indebtedness secured hereby due and payable.

8.    Appointment of Receiver. Until default in the performance of the covenants and agreements of this Mortgage and subject to the applicable notice and cure period, the Mortgagor shall be entitled to collect the rents, issues and profits from the Property, but  in case of a default in any of the terms of this Mortgage or

the filing of a complaint to foreclose this or any other mortgage encumbering the Property, the Mortgagee shall immediately, and without further notice and as a matter of strict right, be entitled to the appointment of a receiver of the Property by court order and of the rents, issues, profits, prepaid rentals or security monies, deposits and revenues thereof, from whatsoever source derived, with the usual powers and duties of receivers in such cases, and such appointment shall be made by such court as a matter of strict right to the Mortgagee and without reference to the adequacy or inadequacy of the value of the Property, or to the solvency or insolvency of the Mortgagor, and such rents, profits, prepaid rentals or security monies, deposits, income and revenue shall be applied by such receiver to the payment of the indebtedness, cost and charges secured by this Mortgage, according to the order of such court, and such receiver may be continued in possession of the Property until the time of the sale thereof under such foreclosure and until the confirmation of such sale by the court.

9.    Contest of Lien. If any action or proceeding shall be commenced by any person other than the holder of this Mortgage, to which action or proceeding the holder of this Mortgage is made a party, or in which it shall become necessary to defend or uphold the lien of this Mortgage, all sums paid by the holder of this Mortgage for the reasonable expense of any litigation, including appellate proceedings, to prosecute, or defend the rights and liens created by this Mortgage (including reasonable counsel fees), shall be paid by the Mortgagor, together with interest thereon at the Default Rate, and any such sum, and the interest thereon, shall be a claim upon the Property, attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note. In any action or proceedings to foreclose this Mortgage or to recover or collect the debt secured thereby, the provisions of law respecting the recovery of costs, disbursements and allowances shall prevail, unaffected by this covenant.

10.    Condemnation and Related Actions: In the event that the Property, or any part thereof, or any interest therein, shall be condemned and taken for public use under the power of eminent domain, or shall be affected by governmental or private action in a manner that entitles Mortgagor to an award of damages, compensation or other consideration of any kind, Mortgagor hereby confirms its grant to Mortgagee of a security interest in all such awards, including without limitation, damages and other consideration given on account of such taking or other action, and same shall be paid directly to the Mortgagee, up to the amount then evidenced and secured by the Note and this Mortgage, and shall be applied to the payments due thereunder in inverse order of maturity.

11.    Subrogation of Mortgagee. To the extent of the indebtedness of the Mortgagor to the Mortgagee described herein or secured hereby, the Mortgagee is hereby subrogated to the lien or liens and to the rights of the owner and holders thereof of each and every mortgage, lien or other encumbrance on the Property which is paid or satisfied, in whole or in part, out of the proceeds of the Note, and the respective liens of said mortgages, liens or other encumbrances shall be, and the same and each of them hereby is preserved and shall pass to and be held by the Mortgagee as security for the Note, to the same extent that it would have been preserved and would have been passed to and been held by the Mortgagee had it been duly and regularly assigned, transferred, set over and delivered unto the Mortgagee by separate deed of assignment, notwithstanding the fact that the same may be satisfied and canceled of record, it being the intention of the parties hereto that the same will be satisfied and canceled of record by the holders thereof at or about the time of the recording of this Mortgage.

12.    Costs and Expenses of Enforcement. The Mortgagor shall pay all and singular costs, charges and expenses, including counsel fees (whether or not suit is brought or appeal taken therefrom), reasonably incurred or paid at any time by the Mortgagee because of the failure on the part of the Mortgagor to perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the Note and this Mortgage, or either, and every such payment shall bear interest from date of such expenditure at the Default Rate.

13.    Extension of Time and/or Modification of Terms. No extension of time or modification of the terms of the Note and this Mortgage, and no release of any part or parts of the Property shall, without the consent of the Mortgagee, release, relieve, or discharge the Mortgagor from the payment of any of the sums

hereby secured, but in such event the Mortgagor shall nevertheless be liable to pay such sums according to the terms of such extension or modifications unless specifically released and discharged in writing by the Mortgagee; further, acceptance of part payment of any installment of principal or interest, or both, or of part performance of any covenant or delay for any period of time in exercising the option to mature the entire debt, shall not operate as a waiver of the right to exercise such option or act upon such default, partial acceptance or any subsequent default. Mortgagee will not accept partial payment or issue partial releases of the Collateral. Satisfaction and release of this Mortgage shall only be issued upon receipt by Mortgagee of the full principal balance and any interest accrued under the Note.

14.    Separate and Cumulative Rights. Mortgagor agrees that all rights of the Mortgagee arising under the provisions and covenants in this Mortgage shall be separate, distinct and cumulative and that none shall be in exclusion of the other; and that, further, no act of the Mortgagee shall be construed as an election to proceed under any one provision or covenant herein to the exclusion of any other, notwithstanding anything herein to the contrary.

15.    Severability. It is further mutually agreed between the parties hereto and made a specific part of this instrument, that in case any word, clause, term, phrase or paragraph used in the aforesaid Note and/or this Mortgage deed should be held to be unconstitutional or illegal by any court of competent jurisdiction, the same shall not affect, alter or otherwise impair the meaning of any other word, clause, term, phrase or paragraph in this Note and Mortgage, and the same shall stand in full force and effect and shall be obligatory upon the assignees, heirs and legal representatives of both respective parties hereto.

16.    Prior Mortgages. Mortgagor represents and warrants to Mortgagee that no mortgage which encumbers all or any of the Property is prior in time and/or dignity ("Prior Mortgage") to this Mortgage. In the event this representation is not accurate, then in addition to the right of Mortgagee to exercise its other rights and remedies, Mortgagor hereby authorizes Mortgagee to expend funds and to take any other action which Mortgagee may deem necessary to satisfy in whole or in part any Prior Mortgage; all such funds and all such action taken shall be at Mortgagor's expense and any funds so expended shall become part of the indebtedness secured by this Mortgage and shall bear interest from the date of expenditure by the Mortgagee at the Default Rate until paid. All such funds, together with accrued interest, shall be paid to Mortgagee on demand.

17.    Gender. In this Mortgage and the Note it secures, the singular shall include the plural and the masculine shall include the feminine neuter.

18.    Entire Agreement: Modifications. This Mortgage constitutes the entire agreement between the parties hereto with respect to the Property and the terms and provisions hereof may not be modified except by written instrument signed by the party to be charged.

19.    Time of the essence. Time is of the essence of this Mortgage and no waiver of any obligation hereunder or of the obligation secured hereby shall at any time thereafter be held to be a waiver of the terms hereof or of the Note secured hereby.

20.    Abandonment. If at any time while this Mortgage is in default, the Property shall be abandoned or vacated, the Mortgagee, if in its reasonable discretion such steps are necessary for the protection of the Property, shall have the right, power and authority at its option to enter upon the Property and to secure same by changing locks thereon, to paint and repair such premises, and to place signs thereon notifying that it has taken possession of the Property, and it may also place signs thereon offering to sell the Property subject to its acquisition of title thereto by foreclosure proceedings or otherwise; and any such action by the Mortgagee as described above shall not be deemed to be a trespass or trespasses or unlawful detainer upon such Property. All sums paid or advanced by the Mortgagee in the protection of the Property as herein provided shall be charged into the mortgage account and become an integral part thereof, subject in all respects to the terms, conditions and covenants of the Note and this Mortgage, as fully and to the same extent as though a part of the original

indebtedness evidenced by said Note and secured by this Mortgage, excepting, however, that said sums shall be repaid to the Mortgagee forthwith upon its demand, together with interest on such sums at the Default Rate.

21.    Assignment of Leases and Property Income. Mortgagor hereby absolutely and unconditionally assigns and transfers to Mortgagee, (i) all right, title and interest of Mortgagor in and under all leases, lettings, tenancies and licenses of the Property or any part thereof now or hereafter entered into and all amendments, extensions, renewals and guaranties thereof, all security therefor, and all moneys payable thereunder (collectively, the "Leases") and (ii) all rents, income, accounts, receivables, issues, profits, security deposits and other benefits to which Mortgagor may now or hereafter be entitled from the Property or in connection with the Leases (collectively, the "Property Income"). Mortgagor shall not otherwise assign, transfer or encumber in any manner the Leases or the Property Income or any portion thereof. Mortgagor shall have a license to collect and use the Property Income as the same becomes due and payable, revocable by Mortgagee, so long as no default has occurred herein, but may not collect any Property Income more than two (2) months in advance of the date the same becomes due. The assignment in this Section shall constitute an absolute and present assignment of the Leases and the Property Income, and not an additional assignment for security, and the existence or exercise of the Mortgagor's revocable license to collect Property Income shall not operate to subordinate this assignment to any subsequent assignment. The exercise by Mortgagee of any of its rights or remedies under this Section shall not be deemed or construed to make Mortgagee a mortgagee-in-possession.

22.    Transfer: Assumption of Mortgage. It is a requirement hereunder that written approval from the Mortgagee must be obtained prior to any sale, gift, exchange, conveyance, encumbrance or other Transfer, as defined in the Note, as to any of the Property or any direct or indirect ownership interest in Mortgagor. In the event such prior written approval has not been obtained prior to any such Transfer, the entire unpaid indebtedness under the Note and this mortgage shall be due and payable at the time of any such Transfer. In the event the Mortgagee should in its sole discretion agree to the Transfer of any Property or ownership interest to, and/or the assumption of this mortgage by, a third party, the Mortgagee shall have the right to require complete financial information from such transferee, and the right to charge a customary fee. In the event a Transfer should be made by the Mortgagor, and the grantee named in such Transfer fails or refuses to assume the payment of the obligations evidenced by the Note and other Loan Documents and secured by this Mortgage, in accordance with their respective terms, then and in that event, at the option and upon the demand of the Mortgagee all sums of money secured hereby shall immediately become forthwith due and payable. In the event the ownership of said Property or any part thereof becomes vested in a person other than the Mortgagor, the Mortgagee may, without notice to the Mortgagor, deal with such successor or successors in interest with reference to this Mortgage and the debt hereby secured in the same manner as with the Mortgagor, and may forbear to sue or may extend time for payment of the debt secured hereby, without discharging or in any way affecting the liability of the Mortgagor hereunder or upon the debt hereby secured.

23.    Environmental Representations. Without limitation of any separate indemnity executed by Mortgagor in favor of Mortgagee, Mortgagor represents and warrants that (a) to the best of its knowledge no asbestos, substance containing asbestos, or any other substance deemed hazardous by federal, state or local laws, rules, regulations or orders respecting such materials has been installed or constructed upon or in the improvements comprising a part of the Property, and Mortgagor has not and will not install or permit to be installed in, on or about the improvements comprising a part of the Property, any such asbestos, substance containing asbestos or other hazardous substance; and (b) to the best of its knowledge the Property is free from all hazardous or toxic wastes and underground storage tanks. Mortgagor shall comply with all federal, state or local laws, regulations or orders with respect to the discharge and removal of hazardous or toxic wastes and shall keep the Property free of and from any lien imposed against the Property pursuant to such laws, regulations and orders. Mortgagor shall not knowingly install or knowingly permit to be installed on the Property any underground storage tank or any substance deemed hazardous or toxic waste by federal, state or local laws, regulations, orders and ordinances. Mortgagor shall indemnify and save Mortgagee harmless from and against any loss, cost, liability and expense which Mortgagee may incur in connection

with any hazardous materials or other environmental issues arising with respect to the Property, and agrees that this covenant shall survive repayment of the obligations secured by this Mortgage.

    24.    Security Agreement. Mortgagor covenants, warrants, represents and agrees with and to Mortgagee as follows:

    (a)    This Mortgage constitutes a security agreement under the Uniform Commercial Code of the State of Florida (the "Code") and serves as a fixture filing in accordance with the Code. This Mortgage creates a security interest in favor of Mortgagee as secured party under the Code with respect to all Property described in this Mortgage which is covered by the Code. The mention of any portion of such Property in a financing statement filed in the records normally pertaining to personal property shall not derogate from or impair in any manner the intention of Mortgagor and Mortgagee hereby declared that all items of collateral described in this Mortgage are part of the real property encumbered hereby to the fullest extent permitted by law, regardless of whether any such item is physically attached to the improvements or whether serial numbers are used for the better identification of certain items. Specifically, the mention in any such financing statement of (i) the rights in or the proceeds of any policy of insurance, (ii) any condemnation proceeds, (iii) Mortgagor's interest in any Leases or Property Income, or (iv) any other items of collateral described in this Mortgage, shall not be construed to alter, impair or impugn any rights of Mortgagee as determined by this Mortgage or the priority of Mortgagee's lien upon and security interest in such collateral.

Any such mention shall be for the protection of Mortgagee in the event that notice of Mortgagee's priority of interest as to any portion of the Property is required to be filed in accordance with the Code to be effective against or take priority over the interest of any particular class of persons, including the federal government or any subdivision or instrumentality thereof.

    (b)    Except for the security interest granted by this Mortgage, Mortgagor is and, as to portions of the collateral described in this Mortgage to be acquired after the date hereof will be, the sole owner of all such collateral, free from any lien, security interest, encumbrance or adverse claim thereon of any kind whatsoever. Mortgagor shall notify Mortgagee of, and shall defend the collateral described in this Mortgage against, all claims and demands of all persons at any time claiming the same or any interest therein.

    (c)    Except as otherwise provided in this Mortgage or the Note, Mortgagor shall not lease, sell, convey or in any manner transfer the collateral described in this Mortgage without the prior written consent of Mortgagee. Notwithstanding the foregoing, Mortgagor may enter into leases, in the ordinary course of business, so long as the terms of such leases reflect current market conditions and are comparable to other existing leases on the Property.

    (d)    The collateral described in this Mortgage is used or bought for investment purposes only, and not for personal, family or household purposes.

    (e)    The collateral described in this Mortgage shall be kept on or at the Property, and Mortgagor shall not remove or permit the removal thereof from the Property without the prior consent of Mortgagee, except such portions or items of such collateral as are consumed or worn out in ordinary usage, all of which shall be promptly replaced by Mortgagor with items of equal or greater value.

    (f)    In the event of any change in name, identity or structure of Mortgagor, Mortgagor shall notify Mortgagee thereof and promptly after request shall execute, file and record such Code forms as are necessary to maintain the priority of Mortgagee's lien upon and security interest in the collateral described in this Mortgage, and shall pay all expenses and fees in connection with the filing and recording thereof. If Mortgagee shall require the filing or recording of additional Code forms or continuation statements, Mortgagee shall be entitled, without the consent of Mortgagor, to execute, file and record such Code forms or continuation statements as Mortgagee shall deem necessary on behalf of Mortgagor as provided hereinbelow if permitted by applicable law, and shall pay all expenses and fees in connection with the filing and recording thereof. If Mortgagee shall initially pay such expenses, Mortgagor shall promptly reimburse Mortgagee for

the expenses.

(g)    Mortgagor hereby irrevocably appoints Mortgagee as its attorney-in-fact, coupled with an interest, to execute in the name of and on behalf of Mortgagor any and all financing statements and continuations thereof and to file with the appropriate public office on its behalf and at its expense any financing or other statements signed only by Mortgagee, as secured party, in connection with the collateral covered by this mortgage.

A CARBON, PHOTOGRAPHIC OR OTHER REPRODUCTION OF THIS MORTGAGE OR ANY FINANCING STATEMENT RELATING TO THIS MORTGAGE SHALL BE SUFFICIENT AS A FINANCING STATEMENT.

25.    Miscellaneous.

a.    No Additional Indebtedness. Mortgagor will not borrow any additional sums of money, whether secured or unsecured, and will not incur any indebtedness, whether secured or unsecured, except the customary, necessary and usual trade payables incurred in connection with the operation and maintenance of the Property.

b.    Litigation. There are no actions, suits or proceedings pending or threatened against or affecting any portion of the Property, Manager or the party or parties selling the Property to Mortgagor. While the obligations and indebtedness secured by this Mortgage remain outstanding, Mortgagor covenants to immediately notify Mortgagee if at any time the representation set forth in this paragraph is no longer true. If such actions, suits or proceedings would constitute a default under this Mortgage and/or the other Loan Documents, such notification shall not serve to mitigate the default and Mortgagor shall continue to be in default under this Mortgage and/or the other Loan Documents.

c.    Judicial and Administrative Proceedings. There are no judicial, administrative, mediation or arbitration actions, suites or proceedings pending or threatened against Mortgagor, and there are no outstanding and unpaid judgments or arbitration awards against Mortgagor which would have a materially adverse effect on the financial conditions or business or properties of Mortgagor. Mortgagor is not in default with respect to any regulation, order, writ or decree of any court or governmental or municipal department, commission, board, bureau, agency, or instrumentality.

d.    No Defaults. Mortgagor is not in default under any agreement or instrument to which it is a party or by which it may be bound. The execution and delivery of the Loan Documents and the consummation of the transaction contemplated thereby do not conflict with or result in a breach of any regulation, order, writ, injunction or decree of any court or governmental or municipal instrumentality or in the breach of or default under any indenture, contract, agreement or other instrument to which Mortgagor is are a party of by which any is bound.

e.    No Violation. There are no violations or notices of violations of any federal law or municipal ordinance or order or requirement of the state in which the Property is located or any municipal department or other governmental authority having jurisdiction affecting the Property.

f.    No Governmental Action. There are no pending or to the best of Mortgagor's knowledge, threatened liens or governmental actions, notices of violation, notices of noncompliance or other proceedings of any kind that, if adversely determined, would impair the value of the Property or the priority of the lien of this Mortgage or of any of the other Loan Documents or result in

a special assessment against the Property.

g. Full and Fair Disclosure. All reports, certificates, affidavits, statements and other data furnished by Mortgagor to Mortgagee in connection with the Loan are true and correct in all material respects and do not omit to state any fact or circumstance necessary to make the statements contained therein not misleading.

h. No Other Financing. There are no security agreements or financing statements affecting any of the Property other than the security agreements and financing statements created in favor of Mortgagee.

i. Further Assurances. Mortgagor will, at any time on Mortgagee's request, make, do, execute and deliver to Mortgagee, and, where appropriate, shall cause to be recorded or filed, any and all further reasonable acts, mortgages, documents and assurances as may be necessary to effectuate, complete and confirm the transactions contemplated under the Loan Documents.

j. Jurisdiction. Any proceeding to foreclose this Mortgage shall be brought in any federal or state court with jurisdiction in Broward County, Florida, and Mortgagor waives any objection which it may now or hereafter have to the laying of venue of any such suit, action or proceeding, and Mortgagor hereby irrevocably submit to the jurisdiction of any such court in any suit, action or proceeding.

**THIS IS A BALLON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $3,225,000.00 TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

Signed, sealed and delivered in the presence of:

Witness: _Maria E Del Sol_

Witness: _____

2501 DEL LAGO, LLC, a Florida limited liability company

By: _____
     WALTER GARCIA, Authorized Member

STATE OF FLORIDA         }
                         }  ss:
COUNTY OF MIAMI-DADE     }

The foregoing instrument was acknowledged before me this 22 day of May, 2018, by Walter Garcia, as Authorized Member of 2501 Del Lago, LLC, a Florida limited liability company. He is personally known to me or has produced Driver's License as identification.

_____
Notary Public, State of Florida

Notary Public State of Florida
Maria E Del Sol
My Commission FF978302
Expires 05/02/2020

<u>EXHIBIT "A"</u>

Lot 9, DEL LAGO ISLE, according to the Plat thereof, as recorded in Plat Book 42, Page 2, of the Public Records of Broward County, Florida.

## GUARANTY OF PAYMENT AND PERFORMANCE

This Guaranty of Payment and Performance (this "Guaranty") is made as of this 22 day of May, 2018, by WALTER GARCIA, an Individual (the "Guarantor"), in favor of A&S Capital LLC, a Florida limited liability company, whose address is 5900 Collins Ave #807, Miami Beach, FL 33140 ("Lender").

### RECITALS

2501 DEL LAGO, LLC, a Florida limited liability company, whose address is 900 Biscayne Blvd Suite 5602 Miami, FL 33132 (the "Borrower") has requested from Lender a loan in the principal amount of THREE MILLION TWO HUNDRED TWENTY FIVE THOUSAND AND NO/100 DOLLARS ($3,225,000.00) (the "Loan") to be secured by a Mortgage and Security Agreement encumbering, inter alia, certain real property more particularly described as follows (the "Land"):

Lot 9, DEL LAGO ISLE, according to the Plat thereof, as recorded in Plat Book 42, Page 2, of the Public Records of Broward County, Florida.

upon which Land Borrower shall complete the construction of a residential dwelling (herein called the "Improvements") (the Improvements and the Land are hereinafter collectively referred to as the "Property"). Certain terms and conditions of the Loan are set forth in that certain Construction Loan Agreement dated as of even date herewith between Borrower and Lender (as the same may be amended, restated, modified or replaced from time to time, the "Construction Loan Agreement"). As a condition precedent to Lender making the Loan, Lender has required Guarantor to execute and deliver this Guaranty to Lender. Any capitalized term used and not defined in this Guaranty shall have the meaning given to such term in the Loan Agreement.

### AGREEMENTS

Guarantor is the shareholder and director of Borrower and will receive a material benefit from Lender making the Loan to Borrower. For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and in order to induce Lender to make the Loan to Borrower, Guarantor hereby guarantees to Lender the prompt and full payment of the indebtedness and obligations described below in this Guaranty (collectively called the "Guaranteed Obligations"), this Guaranty being upon the following terms and conditions:

Section 1.      Guaranty of Payment.

Guarantor hereby unconditionally and irrevocably guarantees to Lender the punctual payment when due, whether by lapse of time, by acceleration of maturity, or otherwise, of all principal, interest (including interest accruing after maturity and after the commencement of any bankruptcy or insolvency proceeding by or against Borrower, whether or not allowed in such proceeding), prepayment premiums, fees, late charges, costs, expenses, indemnification indebtedness, and other sums of money now or hereafter due and owing, or which Borrower is obligated to pay, pursuant to the terms of the Note, the Construction Loan Agreement, Mortgage, Assignment of Rents and Security Agreement dated as of even date herewith, from Borrower in favor of Lender, to be recorded in the Public Records of Broward County, Florida (as the same may be amended, restated, modified or replaced from time to time, the "Mortgage"), including without limitation, the prompt and timely payment and discharge of all Impositions (as defined in the Mortgage) and the timely payment of insurance premiums), that certain Environmental Indemnity Agreement dated as of even date herewith from Borrower and Guarantor in

favor of Lender (as the same may be amended, restated, modified or replaced from time to time, the "Environmental Indemnity Agreement"), any amounts due and owing in connection with any interest rate derivative or swap agreements entered into by Borrower with Lender or any of Lender's affiliates, any application, agreement, note or other document executed and delivered by Borrower in connection with any Loan, or any of the other Loan Documents, including, without limitation, any letter of credit issued by Lender in connection with the Loan, as the same may from time to time be amended, supplemented, restated or otherwise modified (collectively, the "Indebtedness"). The Indebtedness includes all reasonable costs and expenses incurred by Lender in seeking to enforce Lender's rights and remedies with respect to the Indebtedness, and to protect, defend, maintain or enforce Lender's liens or security interests, including, without limitation, collection costs, default rates of interest, reasonable attorneys' fees and costs at trial and appellate levels and related costs, and costs of alternative dispute resolution, whether or not suit is filed or other proceedings are initiated thereon. This Guaranty covers the Indebtedness presently outstanding and the Indebtedness arising subsequent to the date hereof, including all amounts advanced by Lender in stages or installments. The guaranty of Guarantor as set forth in this Section is a continuing guaranty of payment and not a guaranty of collection.

The foregoing obligations guaranteed under this Section are defined as the "Guaranteed Payment Obligations". The Guaranteed Payment Obligations are included as part of the Guaranteed Obligations for all purposes of this Guaranty.

Section 2.    Guaranty of Performance.

Guarantor hereby unconditionally and irrevocably guarantees to Lender the complete performance when due of all other Obligations of Borrower under all of the Loan Documents, including, without limiting the generality of the foregoing, all such Obligations of Borrower to duly and punctually perform and observe all other terms, covenants and conditions of the Note, the Construction Loan Agreement, the Mortgage, the Environmental Indemnity Agreement, and all other Loan Documents.

The foregoing obligations guaranteed under this Section are defined as the "Guaranteed Performance Obligations." The Guaranteed Performance Obligations are included as part of the Guaranteed Obligations for all purposes of this Guaranty.

The liability and obligations under this Section shall not be limited or restricted by the existence of, or any terms of, the guaranty of payment under Section 1.

Section 3.    Primary Liability of Guarantor.

(a)    This Guaranty is an absolute, irrevocable and unconditional guaranty of payment and performance, and Guarantor shall be liable for the payment and performance of the Guaranteed Obligations as a primary obligor. This Guaranty shall be effective as a waiver of, and Guarantor hereby expressly waives, any right to which Guarantor may otherwise have been entitled, whether existing under statute, at law or in equity, to require Lender to take prior recourse or proceedings against any collateral, security or person. It shall not be necessary for Lender, in order to enforce such payment or performance by Guarantor, first to institute suit or pursue or exhaust any rights or remedies against Borrower or other person liable on such indebtedness or performance, or to enforce any rights against any security given to secure such indebtedness or for such performance, or to join Borrower or any other person liable for the payment or performance of the Guaranteed Obligations or any part thereof in any action to enforce this Guaranty, or to resort to any other means of obtaining payment or performance of the Guaranteed Obligations provided, however, that nothing herein contained shall prevent Lender from suing on the Note or foreclosing the Mortgage or exercising any other right under the Loan Documents.

(b)     Suit may be brought or demand may be made against Borrower or against any or all parties who have signed this Guaranty or any other guaranty covering all or any part of the Guaranteed Obligations, or against any one or more of them, separately or together, without impairing the rights of Lender against any party hereto.  Any time that Lender is entitled to exercise its rights or remedies hereunder, it may in its discretion elect to demand payment and/or performance.  If Lender elects to demand performance, it shall at all times thereafter have the right to demand payment until all of the Guaranteed Obligations have been paid and performed in full.  If Lender elects to demand payment, it shall at all times thereafter have the right to demand performance until all of the Guaranteed Obligations have been paid and performed in full.

Section 4.    Certain Agreements and Waivers by Guarantor.

(a)     Guarantor agrees that neither Lender's rights or remedies nor Guarantor's obligations under the terms of this Guaranty shall be released, diminished, impaired, reduced or affected by any one or more of the following events, actions, facts, or circumstances, and the liability of Guarantor under this Guaranty shall be absolute, unconditional and irrevocable irrespective of:

(i)     any limitation on the liability of, or recourse against, any other person in any Loan Document or arising under any law;

(ii)     any claim or defense that this Guaranty was made without consideration or is not supported by adequate consideration or that the obligations of Guarantor hereunder exceed or are more burdensome than those of Borrower under the other Loan Documents;

(iii)     the taking or accepting of any other security or guaranty for, or right of recourse with respect to, any or all of the Guaranteed Obligations;

(iv)     the operation of any laws (other than statutes of limitation) regarding the limitation of actions, all of which are hereby waived as a defense to any action or proceeding brought by Lender against Guarantor, to the fullest extent permitted by law;

(v)     any homestead exemption or any other exemption under applicable law;

(vi)     any release, surrender, abandonment, exchange, alteration, sale or other disposition, subordination, deterioration, waste, failure to protect or preserve, impairment, or loss of, or any failure to create or perfect any lien or security interest with respect to, or any other dealings with, any collateral or security at any time existing or purported, believed or expected to exist in connection with any or all of the Guaranteed Obligations, or any impairment of Guarantor's recourse against any person or collateral;

(vii)     whether express or by operation of law, any partial release of the liability of Guarantor hereunder (except to the extent paid, performed or expressly so released) or any complete or partial release of Borrower or any other person liable, directly or indirectly, for the payment or performance of any or all of the Guaranteed Obligations;

(viii)     the insolvency, bankruptcy, dissolution, liquidation, termination, receivership, reorganization, merger, consolidation, change of form, structure or ownership, sale of all assets, or lack of corporate, partnership or other power of Borrower or any other person at any time liable for the payment of any or all of the Guaranteed Obligations;

(ix)    either with or without notice to or consent of Guarantor, any renewal, extension, modification, supplement, subordination or rearrangement of the terms of any or all of the Guaranteed Obligations and/or any of the Loan Documents, including material alterations of the terms of payment (including changes in maturity date(s) and interest rate(s) or performance (including changes with respect to construction of the Improvements) or any other terms thereof, or any waiver, termination, or release of, or consent to departure from, any of the Loan Documents or any other guaranty of any or all of the Guaranteed Obligations, or any adjustment, indulgence, forbearance, or compromise that may be granted from time to time by Lender to Borrower or any other person at any time liable for the payment or performance of any or all of the Guaranteed Obligations;

(x)    any neglect, lack of diligence, delay, omission, failure, or refusal of Lender to take or prosecute (or in taking or prosecuting) any action for the collection or enforcement of any of the Guaranteed Obligations, or to foreclose or take or prosecute any action to foreclose (or in foreclosing or taking or prosecuting any action to foreclose) upon any security therefor, or to exercise (or in exercising) any other right or power with respect to any security therefor, or to take or prosecute (or in taking or prosecuting) any action in connection with any Loan Document, or any failure to sell or otherwise dispose of in a commercially reasonable manner any collateral securing any or all of the Guaranteed Obligations;

(xi)    any failure of Lender to notify Guarantor of any creation, renewal, extension, rearrangement, modification, supplement, subordination, or assignment of the Guaranteed Obligations or any part thereof, or of any Loan Document, or of any release of or change in any security, or of the occurrence or existence of any Event of Default, or of any other action taken or refrained from being taken by Lender against Borrower or any security or other recourse, or of any new agreement between Lender and Borrower, it being understood that Lender shall not be required to give Guarantor any notice of any kind under any circumstances with respect to or in connection with the Guaranteed Obligations, any and all rights to notice Guarantor may have otherwise had being hereby waived by Guarantor, and Guarantor shall be responsible for obtaining for itself information regarding Borrower, including any changes in the business or financial condition of Borrower, and Guarantor acknowledges and agrees that Lender shall have no duty to notify Guarantor of any information which Lender may have concerning Borrower;

(xii)    the existence of any claim, counterclaim, set-off or other right that Guarantor may at any time have against Borrower, Lender, or any other person, whether or not arising in connection with this Guaranty, the Note, the Loan Agreement, the Mortgage or any other Loan Document; provided, however, that the foregoing shall not be deemed a waiver of Guarantor's right to assert any compulsory counterclaim maintained in a court of the United States or the State of Florida if such counterclaim is compelled under local law or procedure;

(xiii)    the unenforceability of all or any part of the Guaranteed Obligations against Borrower, whether because the Guaranteed Obligations exceed the amount permitted by law or violate any usury law, or because the persons creating the Guaranteed Obligations acted in excess of their authority, or because of a lack of validity or enforceability of or defect or deficiency in any of the Loan Documents, or because Borrower has any valid defense, claim or offset with respect thereto, or because Borrower's obligation ceases to exist by operation of law, or because of any other reason or circumstance, it being agreed that Guarantor shall remain liable hereon regardless of whether Borrower or any other person be found not liable on the Guaranteed Obligations, or any part thereof, for any reason (and regardless of any joinder of Borrower or any

other party in any action to obtain payment or performance of any or all of the Guaranteed Obligations);

(xiv)   any order, ruling or plan of reorganization emanating from proceedings under Title 11 of the United States Code with respect to Borrower or any other person, including any extension, reduction, composition, or other alteration of the Guaranteed Obligations, whether or not consented to by Lender, or any action taken or omitted by Lender in any such proceedings, including any election to have Lender's claim allowed as being secured, partially secured or unsecured, any extension of credit by Lender in any such proceedings or the taking and holding by Lender of any security for any such extension of credit;

(xv)   any other condition, event, omission, or action that would in the absence of this paragraph result in the release or discharge of the Guarantor from the performance or observance of any obligation, covenant or agreement contained in this Guaranty or any other agreement;

(xvi)   any early termination of any of the Guaranteed Obligations; or

(xvii)   Lender's enforcement or forbearance from enforcement of the Guaranteed Obligations on a net or gross basis.

(b)   In the event any payment by Borrower or any other person to Lender is held to constitute a preference, fraudulent transfer or other voidable payment under any bankruptcy, insolvency or similar law, or if for any other reason Lender is required to refund such payment or pay the amount thereof to any other party, such payment by Borrower or any other party to Lender shall not constitute a release of Guarantor from any liability hereunder, and this Guaranty shall continue to be effective or shall be reinstated (notwithstanding any prior release, surrender or discharge by Lender of this Guaranty or of Guarantor), as the case may be, with respect to, and this Guaranty shall apply to, any and all amounts so refunded by Lender or paid by Lender to another person (which amounts shall constitute part of the Guaranteed Obligations), and any interest paid by Lender and any reasonable attorneys' fees, costs and expenses paid or incurred by Lender in connection with any such event.

(c)   It is the intent of Guarantor and Lender that the obligations and liabilities of Guarantor hereunder are absolute, irrevocable and unconditional under any and all circumstances and that until the Guaranteed Obligations are fully and finally paid and performed, and not subject to refund or disgorgement, the obligations and liabilities of Guarantor hereunder shall not be discharged or released, in whole or in part, by any act or occurrence that might, but for the provisions of this Guaranty, be deemed a legal or equitable discharge or release of a guarantor.

(d)   Guarantor's obligations shall not be affected, impaired, lessened or released by loans, credits or other financial accommodations now existing or hereafter advanced by Lender to Borrower in excess of the Guaranteed Obligations.  All payments, repayments and prepayments of the Loan, whether voluntary or involuntary, received by Lender from Borrower, any other person or any other source (other than from Guarantor pursuant to a demand by Lender hereunder), and any amounts realized from any collateral for the Loan, shall be deemed to be applied first to any portion of the Loan which is not covered by this Guaranty, and last to the Guaranteed Obligations, and this Guaranty shall bind Guarantor to the extent of any Guaranteed Obligations that may remain owing to Lender.  Lender shall have the right to apply any sums paid by Guarantor to any portion of the Loan in Lender's sole and absolute discretion.

(e)   If acceleration of the time for payment of any amount payable by Borrower under the Note, the Loan Agreement, or any other Loan Document is stayed or delayed by any law or tribunal, all such amounts shall nonetheless be payable by Guarantor on demand by Lender.

(f)    Guarantor hereby waives and agrees not to assert or take advantage of (i) any right or claim of right to cause a marshalling of any of Borrower's assets or the assets of any other party now or hereafter held as security for the Indebtedness; (ii) the defense of laches in any action hereunder or for the payment of the Indebtedness and performance of any obligation hereby guaranteed; (iii) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor, any other guarantor of the Loan, or Borrower or any other person or entity, or the voluntary or involuntary dissolution of Borrower or Guarantor, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceeding) of Borrower or any other person or entity; (iv) any defense based on the failure of Lender to give notice of the existence, creation, or incurring of any new or additional indebtedness or obligation, or of any action or nonaction on the part of any other person whomsoever, or any modification of the terms of the Loan Documents, or the Indebtedness, in connection with any obligation hereby guaranteed; (v) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor or any other guarantor of the Loan or the right of Guarantor to proceed against Borrower or any other guarantor for reimbursement, or both; (vi) any defense based upon failure of Lender to commence an action against Borrower; (vii) any defense based upon acceptance of this Guaranty by Lender; (viii) any defense based upon the invalidity or unenforceability of any of the Loan Documents; (ix) any defense based upon any complete or partial release of liability contained in any of the Loan Documents; (x) any defense based upon any transfer by Borrower of all or any part of the collateral for the Loan; (xi) any defense based upon the failure of Lender to perfect any security or to extend or renew the perfection of any security; and (xii) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled.

Section 5.    Subordination.

If, for any reason whatsoever, Borrower is now or hereafter becomes indebted to Guarantor:

(a)    such indebtedness and all interest thereon and all liens, security interests and rights now or hereafter existing with respect to property of Borrower securing such indebtedness shall, at all times, be subordinate in all respects to the Guaranteed Obligations and to all liens, security interests and rights now or hereafter existing to secure the Guaranteed Obligations;

(b)    Guarantor shall not be entitled to enforce or receive payment, directly or indirectly, of any such indebtedness of Borrower to Guarantor until the Guaranteed Obligations have been fully and finally paid and performed;

(c)    Guarantor hereby assigns and grants to Lender a security interest in all such indebtedness and security therefor, if any, of Borrower to Guarantor now existing or hereafter arising, including any dividends and payments pursuant to debtor relief or insolvency proceedings referred to below. In the event of receivership, bankruptcy, reorganization, arrangement or other debtor relief or insolvency proceedings involving Borrower as debtor, Lender shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and shall have the right to receive directly from the receiver, trustee or other custodian (whether or not an Event of Default shall have occurred or be continuing under any of the Loan Documents), dividends and payments that are payable upon any obligation of Borrower to Guarantor now existing or hereafter arising, and to have all benefits of any security therefor, until the Guaranteed Obligations have been fully and finally paid and performed. If, notwithstanding the foregoing provisions, Guarantor should receive any payment, claim or distribution that is prohibited as provided above in this Section, Guarantor shall pay the same to Lender immediately, Guarantor hereby agreeing that it shall receive the payment, claim or distribution in trust for Lender and shall have absolutely no dominion over the same except to pay it immediately to Lender; and

(d)    Guarantor shall promptly upon request of Lender from time to time execute such documents and perform such acts as Lender may reasonably require to evidence and perfect its interest and to permit or facilitate exercise of its rights under this Section, including execution and delivery of proofs of claim, further assignments and security agreements, and delivery to Lender of any promissory notes or other instruments evidencing indebtedness of Borrower to Guarantor. All promissory notes, accounts receivable ledgers or other evidences, now or hereafter held by Guarantor, of obligations of Borrower to Guarantor shall contain a specific written notice thereon that the indebtedness evidenced thereby is subordinated under and is subject to the terms of this Guaranty.

Section 6.    Other Liability of Guarantor or Borrower.

If Guarantor is or becomes liable, by endorsement or otherwise, for any indebtedness owing by Borrower to Lender other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may have against Guarantor. If Borrower is or becomes indebted to Lender for any indebtedness other than or in excess of the Guaranteed Obligations, any payment received or recovery realized upon such other indebtedness of Borrower to Lender may be applied to such other indebtedness. This Guaranty is independent of (and shall not be limited by) any other guaranty now existing or hereafter given. Further, Guarantor's liability under this Guaranty is in addition to any and all other liability Guarantor may have in any other capacity to Lender.

Section 7.    Debt to Shareholders.

Upon the occurrence of an Event of Default, or if a condition exists, which but for the giving of notice or the passage of time, would constitute an Event of Default, the Guarantor agrees not to make any distributions or payments on loans to its shareholders.

Section 8.    Lender Assigns: Disclosure of Information.

This Guaranty is for the benefit of Lender and Lender's successors and assigns, and in the event of an assignment of the Guaranteed Obligations, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Obligations so assigned, may be transferred with such Guaranteed Obligations. Guarantor waives notice of any transfer or assignment of the Guaranteed Obligations or any part thereof. Lender may sell or offer to sell the Loan or interests therein to one or more assignees or participants. Guarantor shall execute, acknowledge and deliver any and all instruments reasonably requested by Lender in connection therewith, and to the extent, if any, specified in any such assignment or participation, such assignee(s) or participant(s) shall have the same rights and benefits with respect to the Loan Documents as such person(s) would have if such person(s) were Lender hereunder. Lender may disclose to any such assignee or participant or prospective assignee or participant, to Lender's affiliates, to any regulatory body having jurisdiction over Lender and to any other parties as necessary or appropriate in Lender's reasonable judgment, any information Lender now has or hereafter obtains pertaining to the Guaranteed Obligations, this Guaranty, or Guarantor, including information regarding any security for the Guaranteed Obligations or for this Guaranty, and/or credit or other information on Guarantor and/or any other person liable, directly or indirectly, for any part of the Guaranteed Obligations.

Section 9.    Binding Effect: Joint and Several Liability.

This Guaranty is binding not only on Guarantor, but also on Guarantor's heirs, personal representatives, successors and assigns. If this Guaranty is signed by more than one person, then all of the obligations of Guarantor arising hereunder shall be jointly and severally binding on each of the

undersigned, and their respective heirs, personal representatives, successors and assigns, and the term "Guarantor" shall mean all of such persons and each of them individually.

Section 10.    Governing Law.

The validity, enforcement, and interpretation of this Guaranty, shall for all purposes be governed by and construed in accordance with the laws of the State of Florida and applicable United States federal law, and is intended to be performed in accordance with, and only to the extent permitted by, such laws. All obligations of Guarantor hereunder are payable and performable at the place or places where the Guaranteed Obligations are payable and performable. This Guaranty is an agreement executed under seal. If any Guarantor is a corporation, the designation "(SEAL)" on this Guaranty shall be effective as the affixing of such Guarantor's corporate seal physically to this Guaranty.

Section 11.    Invalidity of Certain Provisions.

If any provision of this Guaranty or the application thereof to any person or circumstance shall, for any reason and to any extent, be declared to be invalid or unenforceable, neither the remaining provisions of this Guaranty nor the application of such provision to any other person or circumstance shall be affected thereby, and the remaining provisions of this Guaranty, or the applicability of such provision to other persons or circumstances, as applicable, shall remain in effect and be enforceable to the maximum extent permitted by applicable law.

Section 12.    Costs and Expenses of Enforcement.

Guarantor agrees to pay to Lender on demand all reasonable costs and expenses incurred by Lender in seeking to enforce Lender's rights and remedies under this Guaranty, including court costs, costs of alternative dispute resolution and reasonable attorneys' fees and costs, whether or not suit is filed or other proceedings are initiated hereon. All such reasonable costs and expenses incurred by Lender shall constitute a portion of the Guaranteed Obligations hereunder, shall be subject to the provisions hereof with respect to the Guaranteed Obligations and shall be payable by Guarantor within ten (10) days of written demand by Lender.

Section 13.    No Usury.

It is not the intention of Lender or Guarantor to obligate Guarantor to pay interest in excess of that lawfully permitted to be paid by Guarantor under applicable law. Should it be determined that any portion of the Guaranteed Obligations or any other amount payable by Guarantor under this Guaranty constitutes interest in excess of the maximum amount of interest that Guarantor, in Guarantor's capacity as guarantor, may lawfully be required to pay under applicable law, the obligation of Guarantor to pay such interest shall automatically be limited to the payment thereof in the maximum amount so permitted under applicable law. The provisions of this Section shall override and control all other provisions of this Guaranty and of any other agreement between Guarantor and Lender.

Section 14.    Representations, Warranties, and Covenants of Guarantor.

Until the Guaranteed Obligations are paid and performed in full and each and every term, covenant and condition of this Guaranty is fully performed, Guarantor hereby represents, warrants, and covenants that: (a) Guarantor has a financial interest in Borrower and will derive a material and substantial benefit, directly or indirectly, from the making of the Loan to Borrower and from the making of this Guaranty by Guarantor; (b) this Guaranty is duly authorized and valid, and is binding upon and enforceable against Guarantor; (c) Guarantor is not, and the execution, delivery and performance by

Guarantor of this Guaranty will not cause Guarantor to be, in violation of or in default with respect to any law or in default (or at risk of acceleration of indebtedness) under any agreement or restriction by which Guarantor is bound or affected; (d) unless Guarantor is a natural person, Guarantor is duly organized, validly existing, and in good standing under the laws of the state of its organization and has full power and authority to enter into and perform this Guaranty; (e) except as previously disclosed to Lender in writing, there is no litigation pending or, to the knowledge of Guarantor, threatened by or before any tribunal against or affecting Guarantor; (f) all financial statements and information heretofore furnished to Lender by Guarantor do, and all financial statements and information hereafter furnished to Lender by Guarantor will, fully and accurately, in all material aspects, present the condition (financial or otherwise) of Guarantor as of their dates and the results of Guarantor's operations for the periods therein specified, and, since the date of the most recent financial statements of Guarantor heretofore furnished to Lender, no material adverse change has occurred in the financial condition of Guarantor, nor, except as heretofore disclosed in writing to Lender, has Guarantor incurred any material liability, direct or indirect, fixed or contingent; (g) after giving effect to this Guaranty, Guarantor is solvent, is not engaged or about to engage in business or a transaction for which the property of Guarantor is an unreasonably small capital, and does not intend to incur or believe that it will incur debts that will be beyond its ability to pay as such debts mature; (h) Guarantor has read and fully understands the provisions contained in the Note, the Loan Agreement, the Mortgage, the Environmental Indemnity Agreement and the other Loan Documents. No Loan Documents or other document, certificate or statement (including, without limitation, any financial statements provided to Lender by Guarantor) furnished to Lender by or on behalf of Guarantor contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein and therein not misleading. Guarantor acknowledges that all such statements, representations and warranties shall be deemed to have been relied upon by Lender as an inducement to make the Loan to Borrower. Guarantor's representations, warranties and covenants are a material inducement to Lender to enter into the other Loan Documents shall survive the execution hereof and any bankruptcy, foreclosure, transfer of security or other event affecting Borrower, Guarantor, any other party, or any security for all or any part of the Guaranteed Obligations.

Section 15.    Notices.

All notices from the Guarantor to Lender and Lender to Guarantor required or permitted by any provision of this Guaranty shall be in writing and sent by registered or certified mail or nationally recognized overnight delivery service and addressed as follows:

TO LENDER:          A&S Capital, LLC
                              5900 Collins Avenue, #807,
                              Miami Beach, Florida 33140

TO GUARANTOR:      2501 Del Lago, LLC
                              900 Biscayne Blvd Suite 5602
                              Miami, FL 33132

Such addresses may be changed by such notice to the other party. Notice given as hereinabove provided shall be deemed given on the date of its deposit in the United States Mail and, unless sooner actually received, shall be deemed received by the party to whom it is addressed on the third calendar day following the date on which said notice is deposited in the mail, or if a courier system is used, on the date of delivery of the notice.

Section 16.    Cumulative Rights.

All of the rights and remedies of Lender under this Guaranty and the other Loan Documents are cumulative of each other and of any and all other rights at law or in equity, and the exercise by Lender of any one or more of such rights and remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other rights and remedies. No single or partial exercise of any right or remedy shall exhaust it or preclude any other or further exercise thereof, and every right and remedy may be exercised at any time and from time to time. No failure by Lender to exercise, nor delay in exercising, any right or remedy shall operate as a waiver of such right or remedy or as a waiver of any Event of Default. No notice to or demand on Guarantor in any case shall of itself entitle Guarantor to any other or further notice or demand in similar or other circumstances. No provision of this Guaranty or any right or remedy of Lender with respect hereto, or any default or breach, can be waived, nor can this Guaranty or Guarantor be released or discharged in any way or to any extent, except specifically in each case by a writing intended for that purpose (and which refers specifically to this Guaranty) executed and delivered by Lender to Guarantor.

Section 17.    Term of Guaranty.

This Guaranty shall continue in effect until all the Guaranteed Obligations and all of the obligations of Guarantor to Lender under this Guaranty are fully and finally paid, performed and discharged and are not subject to any bankruptcy preference period or any other disgorgement.

Section 18.    Subrogation.

Guarantor shall not have any right of subrogation under any of the Loan Documents or any right to participate in any security for the Guaranteed Obligations or any right to reimbursement, exoneration, contribution, indemnification or any similar rights, until the Guaranteed Obligations have been fully and finally paid, performed and discharged in accordance with Section 17 above, and Guarantor hereby waives all of such rights.

Section 19.    Intentionally Deleted.

Section 20.    No Transfer of Assets.

Guarantor shall not, during the term of the Loan, transfer any material portion of its assets unless such transfer is in the ordinary course of Guarantor's business, for fair market value and such fair market value is given to Guarantor, in its sole name, and such transfer will not have a material adverse effect on the financial condition of Guarantor and/or its ability to perform its obligations hereunder, as determined by Lender in its sole and absolute discretion.

Section 21.    Time of Essence.

Time shall be of the essence in this Guaranty with respect to all of Guarantor's obligations hereunder.

Section 22.    Entire Agreement; Counterparts; Construction.

This Guaranty embodies the entire agreement between Lender and Guarantor with respect to the guaranty by Guarantor of the Guaranteed Obligations. This Guaranty supersedes all prior agreements and understandings, if any, with respect to the guaranty by Guarantor of the Guaranteed Obligations. This Guaranty shall be effective upon execution by Guarantor and delivery to Lender. This Guaranty may not be modified, amended or superseded except in a writing signed by Lender and Guarantor referencing this Guaranty by its date and specifically identifying the portions hereof that are to be modified, amended or

superseded.  This Guaranty has been executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which constitute, collectively, one agreement.  As used herein, the words "include" and "including" shall be interpreted as if followed by the words "without limitation."

Section 23.    No Third Party Beneficiary.

Except as specifically provided for herein, Guarantor and Lender do not intend the benefits of this Guaranty to inure to any third party (including Borrower) and no third party shall have any status, right or entitlement under this Guaranty.

Section 24.    Forum.

Guarantor hereby irrevocably submits generally and unconditionally for itself and in respect of its property to the jurisdiction of any state court or any United States federal court sitting in Broward County, Florida.  Guarantor hereby irrevocably waives, to the fullest extent permitted by law, any objection that Guarantor may now or hereafter have to the laying of venue in any such court and any claim that any such court is an inconvenient forum.  Guarantor hereby agrees and consents that, in addition to any methods of service of process provided for under applicable law, all service of process in any such suit, action or proceeding in any state court or any United States federal court sitting in the state specified in the governing law section of this Guaranty may be made by certified or registered mail, return receipt requested, directed to Guarantor at its address for notice set forth in this Guaranty, or at a subsequent address of which Lender received actual notice from Guarantor in accordance with the notice section of this Guaranty, and service so made shall be complete five (5) days after the same shall have been so mailed.  Nothing herein shall affect the right of Lender to serve process in any manner permitted by law or limit the right of Lender to bring proceedings against Guarantor in any other court or jurisdiction.

Section 25.    WAIVER OF JURY TRIAL.

GUARANTOR AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT ANY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THIS AGREEMENT.

THE LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

[CONTINUES ON THE FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Guarantor has duly executed this Guaranty *under seal* as of the date first written above.

Witnesses:

Print Name: _Maria E Del Sol_

Print Name: _Maria Reguz_

GUARANTOR:

By: _____
WALTER GARCIA

STATE OF FLORIDA        )
                                            SS:
COUNTY OF _Miami-Dade_

The foregoing instrument was acknowledged before me this _22_ day of May, 2018, by WALTER GARCIA, he is personally known to me or has produced a _Driver's License_ as identification and took an oath.

NOTARY PUBLIC
Print Name: _Maria E. Del Sol_
My Commission Expires: _5/2/2020_

Notary Public State of Florida
Maria E Del Sol
My Commission FF 978302
Expires 05/02/2020

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.  <u>CACE19025416</u>   DIVISION  <u>11</u>   JUDGE  <u>Andrea Gundersen</u>

**A&S Capital LLC**

Plaintiff(s) / Petitioner(s)

v.

**2501 Del Lago LLC , et al**

Defendant(s) / Respondent(s)

_____/

## ORDER GRANTING MOTION FOR SUMMARY FINAL JUDGMENT

THIS CAUSE came before me on September 9, 2020 upon Plaintiff's Motion For Summary Final Judgment For Foreclosure and Assessment of Reasonable Attorney's Fees, and the Court having examined the documents and pleadings filed herein and being otherwise fully advised, it is

**ORDERED AND ADJUDGED** as follows:

1.    Amounts Due.  Plaintiff, A&S CAPITAL, LLC, a Florida limited liability company, whose address is  2999 NE 191 St, Unit 808, Aventura, FL 33180 is due:

| | |
|---|---:|
| Principal................................................................................. | $2,800,000.00 |
| Interest to date of this Judgment (September 9,2020)........... | $   525,000.00 |
| Title Search Expense.............................................................. | $          275.00 |
| Attorneys Fees total............................................................... | $       4,500.00 |
| Court Costs, now taxed........................................................... | $       2,631.00 |
| Sub-Total................................................................................. | $3,332,406.00 |
| Less Escrow Balance.............................................................. | $(  140,000.00) |
| Total......................................................................................... | $3,192,406.00 |

that shall bear interest at the statutory rate provided in Florida Statute §55.03.

2.    Lien on Property. Plaintiff holds a lien for the total sum superior to all claims or estates of Defendant(s), on the following described property located in Broward County, Florida.

Lot 9, DEL LAGO ISLE, according to the Plat thereof, as recorded in Plat Book 42, at Page

2, of the Public Records of Broward County, Florida.

  a/k/a 2501 Del Lago Drive, Ft. Lauderdale, FL 33316

   3.   Sale of Property. If the total sum with interest at the rate described in paragraph 1 and all costs accrued subsequent to this Judgment are not paid, the Clerk of this Court shall sell said property at Public Sale on **October 14, 2020**, to the highest bidder for cash, except as described in Paragraph 4 in accordance with Section 45.031, Florida Statutes, by electronic sale beginning at 10:00 a.m. on the prescribed date at www.broward.realforeclose.com

   4.   Costs.  Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if Plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for the documentary stamps payable on the certificate of title. If the Plaintiff is the purchaser, the clerk shall credit Plaintiff's bid with the total sum with interest and costs incurred subsequent to this Judgment, or such part of it, as is necessary to pay the bid in full.

   5.   Distribution of Proceeds. On filing the certificate of title the clerk shall distribute the proceeds of the sale, so far as they are sufficient by paying: first, all of Plaintiff's costs; second, documentary stamps affixed to the certificate; third, Plaintiff's attorney's fees; fourth, the total sum due to Plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 1 from this date to the date of the sale; and by retaining any remaining amount pending to the further order of this Court.

   6.   Right of Redemption/Right of Possession. On filing the Certificate of Sale, Defendant(s) and all persons claiming under or against Defendants since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property, and Defendant's right of redemption as prescribed by Section 45.0315, Florida Statute (2013) shall be terminated, except as to claims or rights under Chapter 718 or Chapter 720, Florida Statutes, if any.  Upon the filing of the Certificate of Title, the person named on the Certificate of Title shall be let into possession of the property and upon application by the purchaser or purchasers and payment of the appropriate fees and costs, the Clerk of the Court is hereby specifically authorized and directed to issue a Writ of Possession against named Defendant(s) for the premises and the Sheriff is hereby specifically authorized and directed to serve the Writ of Possession forthwith.  Notwithstanding the foregoing, this paragraph is subject to the provisions of the Protecting Tenant At Foreclosure Act of 2009, as amended.

   7.   Attorney's Fees.  The Court finds, based upon the affidavits/testimony presented and upon inquiry of counsel for the Plaintiff that 12.00 hours were reasonably expended by Plaintiff's counsel and that an hourly rate of $375.00 is appropriate.  Plaintiff's counsel represents that the attorney's fees awarded does not exceed its contract fee with the Plaintiff.  The Court finds that there is no reduction or enhancement factors for consideration by the Court pursuant to Florida Patients Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).

   8.   Jurisdiction Retained. Jurisdiction of this action is retained to enter further orders that

are proper, including without limitation, a motion for the taxation of additional  attorney's fees and court costs pursuant to FRCP 1.525, a deficiency judgment and/or a writ of possession.

9.    Other. The Plaintiff may assign the Judgment or the bid to a third party without further Order of the Court.  If the Plaintiff or the Plaintiff's assignee is the purchaser at the sale, the Clerk shall credit on the bid of the Plaintiff or Plaintiff's assignee the total sum herein found to be due the Plaintiff or such portion thereof as may be necessary to pay fully the bid of the Plaintiff or Plaintiff's assignee.

IF THE PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, IF ANY YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN THE DATE THAT THE CLERK REPORTS THE FUNDS AS UNCLAIMED.  IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF.  YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED.  PLEASE CHECK WITH THE CLERK OF THE COURT OF BROWARD COUNTY WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION.
IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE COUNTY LEGAL AID OFFICE OF LEGAL AID SERVICE OF BROWARD COUNTY, INC., 491 N. STATE ROAD 7, PLANTATION, FL 33317, PHONE: (954) 765-8950.  TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES.  IF THEY CANNOT ASSIST YOU, THEY

CaseNo: CACE19025416
Page 4 of 4

MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS.  IF YOU CHOOSE TO CONTACT BROWARD COUNTY AID SERVICES FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on 09-09-2020.



CACE19025416 09-09-2020 3:59 PM

Hon. Andrea Gundersen

**CIRCUIT JUDGE**

Electronically Signed by Andrea Gundersen

**Copies Furnished To:**
David R Roy , E-mail : david@davidrroy.com
David R Roy , E-mail : teyvon@davidrroy.com
Thomas G Sherman , E-mail : gryska@uniontitleservices.com
Thomas G Sherman , E-mail : Griska@uniontitleservices.com

Main File No. 200249

# INVOICE

**FROM:**

Reliance Appraisals & Services, Inc.
P.O. BOX 560305
MIAMI, FL 33256-0305

Telephone Number: (786) 262-6279    Fax Number: (305) 740-0608

**TO:**

A & S Capital
2999 NE 191 St, #901
Aventura, FL

E-Mail:
Telephone Number:    Fax Number:
Alternate Number:

| INVOICE NUMBER | |
|---|---|
| 200249 | |
| **DATES** | |
| Invoice Date: | |
| Due Date: | |
| **REFERENCE** | |
| Internal Order #: | 200249 |
| Lender Case #: | |
| Client File #: | |
| FHA/VA Case #: | |
| Main File # on form: | 200249 |
| Other File # on form: | |
| Federal Tax ID: | |
| Employer ID: | |

## DESCRIPTION

| | |
|---|---|
| Lender: | A & S Capital |
| Purchaser/Borrower: | N/A |
| Property Address: | 2501 Del Lago Dr |
| City: | Fort Lauderdale |
| County: | BROWARD |
| Legal Description: | LOT 9, DEL LAGO ISLE, PB 42-2 B |

Client: A & S Capital

State: FL    Zip: 33316

## FEES | AMOUNT

| | |
|---|---|
| VALUATION SERVICES | 600 00 |
| | |
| **SUBTOTAL** | 600 00 |

## PAYMENTS | AMOUNT

| | | | |
|---|---|---|---|
| Check #: | Date: | Description: | |
| Check #: | Date: | Description: | |
| Check #: | Date: | Description: | |
| | | **SUBTOTAL** | |
| | | **TOTAL DUE** | $ 600 00 |

| Borrower | N/A | | | | | File No. | 200249 |
|---|---|---|---|---|---|---|---|
| Property Address | 2501 Del Lago Dr | | | | | | |
| City | Fort Lauderdale | County | BROWARD | State | FL | Zip Code | 33316 |
| Lender/Client | A & S Capital | | | | | | |

## TABLE OF CONTENTS



GP Residential ....................................................................................................................... 1
GP Residential ....................................................................................................................... 2
Additional Comparables 4-6 .................................................................................................. 3
GP Residential ....................................................................................................................... 4
General Text Addendum ......................................................................................................... 5
Local Market Update for August 2020 - Page 1 ..................................................................... 6
Local Market Update for August 2020 - Page 2 ..................................................................... 7
Local Market Update for August 2020 - Page 3 ..................................................................... 8
Subject Photos ....................................................................................................................... 9
Comparable Photos 1-3 ......................................................................................................... 10
Comparable Photos 4-6 ......................................................................................................... 11
Location Map .......................................................................................................................... 12
GP Residential Certifications Addendum ................................................................................ 13
USPAP Identification Addendum ............................................................................................ 15
License ................................................................................................................................... 16

Reliance Appraisals & Services, Inc.

Main File No. 200249 | Page # 1 of 16

# RESIDENTIAL APPRAISAL REPORT

File No.: 200249

## SUBJECT

| | | | |
|---|---|---|---|
| Property Address: 2501 Del Lago Dr | City: Fort Lauderdale | State: FL | Zip Code: 33316 |

County: BROWARD   Legal Description: LOT 9, DEL LAGO ISLE, PB 42-2 B

Assessor's Parcel #: 5042-13-14-0090

Tax Year: 2019   R.E. Taxes: $ 92,202   Special Assessments: $ N/A   Borrower (if applicable): N/A

Current Owner of Record: 2501 DEL LAGO LLC.   Occupant: ☐ Owner ☐ Tenant ☒ Vacant   ☐ Manufactured Housing

Project Type: ☐ PUD ☐ Condominium ☐ Cooperative ☒ Other (describe) SINGLE FAMILY HOME   HOA: $ N/A   ☐ per year ☐ per month

Market Area Name: DEL LAGO ISLE   Map Reference: 50-42-13   Census Tract: 0422.00

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)

This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date) ☐ Retrospective ☐ Prospective

## ASSIGNMENT

Approaches developed for this appraisal: ☒ Sales Comparison Approach ☐ Cost Approach ☐ Income Approach (See Reconciliation Comments and Scope of Work)

Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)

Intended Use: INTENDED USE OF THIS APPRAISAL REPORT IS FOR PRIVATE USE, TO ASCERTAIN FAIR MARKET VALUE AS OF THE EFFECTIVE DATE OF THIS APPRAISAL REPORT. NOT FOR A FEDERALLY RELATED TRANSACTION.

Intended User(s) (by name or type): A & S Capital

Client: A & S Capital   Address:

Appraiser: Miguel Muelle   Address: P.O.BOX 560305, MIAMI, FL 33256-0305

## MARKET AREA DESCRIPTION

| Location: | ☒ Urban | ☐ Suburban | ☐ Rural | Predominant Occupancy | One-Unit Housing | | Present Land Use | Change in Land Use |
|---|---|---|---|---|---|---|---|---|
| Built up: | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | | PRICE $(000) | AGE (yrs) | One-Unit 90 % | ☒ Not Likely |
| Growth rate: | ☐ Rapid | ☒ Stable | ☐ Slow | ☒ Owner | | | 2-4 Unit % | ☐ Likely * ☐ In Process * |
| Property values: | ☐ Increasing | ☒ Stable | ☐ Declining | ☐ Tenant | 760 Low 0 | | Multi-Unit % | * To: |
| Demand/supply: | ☐ Shortage | ☒ In Balance | ☐ Over Supply | ☐ Vacant (0-5%) | 20,500 High 90 | | Comm'l 10 % | |
| Marketing time: | ☐ Under 3 Mos. | ☒ 3-6 Mos. | ☐ Over 6 Mos. | ☐ Vacant (>5%) | 2,150 Pred 0-55 | | % | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends): See attached addenda.

## SITE DESCRIPTION

Dimensions: NOT DISCLOSED (SURVEY NOT PROVIDED)   Site Area: 15,750 SF

Zoning Classification: RS-4.4   Description: RES DENTIAL SINGLE FAM LY/LOW DENSITY

Zoning Compliance: ☒ Legal ☐ Legal nonconforming (grandfathered) ☐ Illegal ☐ No zoning

Are CC&Rs applicable? ☐ Yes ☐ No ☒ Unknown   Have the documents been reviewed? ☐ Yes ☐ No   Ground Rent (if applicable) $ /

Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain)

Actual Use as of Effective Date: SINGLE FAMILY HOME   Use as appraised in this report: SINGLE FAMILY HOME

Summary of Highest & Best Use: THE REASONABLY PROBABLE AND LEGAL USE OF VACANT LAND OR AN IMPROVED PROPERTY THAT IS PHYSICALLY POSSIBLE, APPROPRIATELY SUPPORTED, AND FINANCIALLY FEASIBLE AND THAT RESULTS IN THE HIGHEST VALUE.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | LEVEL TO GRADE |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | NONE NOTED | Street | ASPHALT | ☒ | ☐ | Size | TYPICAL FOR AREA |
| Gas | ☐ | ☐ | | Curb/Gutter | NONE/NONE | ☐ | ☐ | Shape | RECTANGULAR |
| Water | ☒ | ☐ | | Sidewalk | NONE | ☐ | ☐ | Drainage | APPEARS ADEQUATE |
| Sanitary Sewer | ☒ | ☐ | | Street Lights | POST | ☐ | ☐ | View | CANAL |
| Storm Sewer | ☒ | ☐ | | Alley | NONE | ☐ | ☐ | | |

Other site elements: ☐ Inside Lot ☐ Corner Lot ☐ Cul de Sac ☐ Underground Utilities ☐ Other (describe)

FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 12011C0576H   FEMA Map Date 08/18/2014

Site Comments: THE APPRAISER WAS NOT FURNISHED A RECENT SURVEY, CONSEQUENTLY NO DETERMINATION OF AN ENCROACHMENT OR OTHER ADVERSE CONDITIONS CAN BE DETERMINED. SUBJECT PROPERTY IS IN CLOSE PROXIMITY TO THE ATLANTIC OCEAN.

## DESCRIPTION OF THE IMPROVEMENTS

| General Description | | | Exterior Description | | Foundation | | Basement | None | Heating | FWA |
|---|---|---|---|---|---|---|---|---|---|---|
| # of Units | 1 | ☐ Acc.Unit | Foundation | CONC BLOCK | Slab | PILINGS | Area Sq. Ft. | ☒ | Type | R/CYCLE |
| # of Stories | 2 | | Exterior Walls | STUCCO/AVG | Crawl Space | NONE | % Finished | | Fuel | ELECTRIC |
| Type ☒ Det. ☐ Att. | | | Roof Surface | BRRL TILE/AVG | Basement | NONE | Ceiling | | | |
| Design (Style) | 2-STORY | | Gutters & Dwnspts. | ALUM/AVG | Sump Pump | N/A | Walls | | Cooling | HVAC |
| ☒ Existing ☐ Proposed ☐ Und.Cons. | | | Window Type | CASEMENT/AVG | Dampness | N/A | Floor | | Central | YES |
| Actual Age (Yrs.) | 25 | | Storm/Screens | IMPACT WNDW | Settlement | N/A | Outside Entry | | Other | |
| Effective Age (Yrs.) | 15 | | | | Infestation | N/A | | | | |

| Interior Description | | Appliances | | Attic | None | Amenities | | | Car Storage | | None |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | MARBLE/WD/AVG | Refrigerator | ☒ | Stairs | ☒ | Fireplace(s) # | 0 | Woodstove(s) # | 0 | Garage | # of cars ( 7 Tot.) |
| Walls | DRYWALL/AVG | Range/Oven | ☒ | Drop Stair | | Patio | OPEN | | | Attach. | 0 |
| Trim/Finish | WOOD/AVG | Disposal | ☒ | Scuttle | | Deck | CONCRETE | | | Detach. | 0 |
| Bath Floor | MARBLE/AVG | Dishwasher | ☒ | Doorway | | Porch | COVERED | | | Blt.-in | 3 |
| Bath Wainscot | MARBLE/AVG | Fan/Hood | ☒ | Floor | | Fence | ALUM/WD | | | Carport | 0 |
| Doors | ALUM/GLASS/WD | Microwave | ☒ | Heated | | Pool | OPEN | | | Driveway | 4 |
| | | Washer/Dryer | ☒ | Finished | | | | | | Surface | PAVERS |

Finished area above grade contains: 10 Rooms   7 Bedrooms   7.1 Bath(s)   7,278 Square Feet of Gross Living Area Above Grade

Additional features: OPEN POOL/SPA

Describe the condition of the property (including physical, functional and external obsolescence): BASED ON A CASUAL OBSERVATION FROM STREET, SUBJECT PROPERTY APPEARS TO BE VACANT AND IN NEED OF UPDATING. AS PER INFORMATION AND PHOTOS PROVIDED TO THIS APPRAISER, SUBJECT PROPERTY IS PRESENTLY NOT IN HABITABLE CONDITION. SUBJECT PROPERTY HAD BEEN PARTIALLY GUTTED (KITCHEN, BATHROOMS, WALLS), IS IN NEED OF A NEW ROOF, WINDOWS, DOORS, SWIMMING POOL REPAIRS, ELECTRICITY, PLUMBING, ETC.. AS PER G.C., APPROXIMATE COST OF REPAIRS, SO AS TO MAKE PROPERTY IN LIVABLE CONDITION IS $500,000+.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

| Main File No. 200249 | Page # 2 of 16 |
|---|---|
| | File No. 200249 |

# RESIDENTIAL APPRAISAL REPORT

**TRANSFER HISTORY**

| Data Source(s): | My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal. |
|---|---|
| Data Source(s): | REALIST/IMAPP/BROWARD COUNTY PROPERTY APPRAISER. |

| | 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: NO OTHER PRIOR SALES OR |
|---|---|---|
| Date: | 05/03/2018 | TRANSACTIONS DISCLOSED FOR SUBJECT PROPERTY WITHIN THE THREE YEARS PRIOR TO |
| Price: | $3,500,000 | THE EFFECTIVE DATE OF THIS APPRAISAL. AS PER MLS HISTORY, SUBJECT PROPERTY WAS |
| Source(s): | BCPA NET, REALIST, MAPP | LISTED FOR SALE ON 11/04/2019 @ $4,250,000; 11/18/19 @ $4,150,000; 12/09/19 @ $4,100,000; |
| | 2nd Prior Subject Sale/Transfer | 12/13/19 @ $3,950,000; 01/22/20 TEMP OFF MKT; 01/31/20 BACK ON MKT; 01/31/20 @ 3,850,000; |
| Date: | N/A | LISTING EXPIRED ON03/25/20. MLS #A10767287. |
| Price: | | |
| Source(s): | | |

**SALES COMPARISON APPROACH TO VALUE (if developed)**  ☐ The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 2501 Del Lago Dr | 2572 Lucille Dr | | 2584 Lucille Dr | | 341 Royal Plaza Dr | |
| | Fort Lauderdale, FL 33316 | Fort Lauderdale, FL 33316 | | Fort Lauderdale, FL 33316 | | Fort Lauderdale, FL 33301 | |
| Proximity to Subject | | 0.23 miles SE | | 0.25 miles SE | | 0.76 miles N | |
| Sale Price | $ | | $ 3,200,000 | | $ 3,225,000 | | $ 3,500,000 |
| Sale Price/GLA | $ /sq.ft. | $ 464.17 /sq.ft. | | $ 556.80 /sq.ft. | | $ 529.50 /sq.ft. | |
| Data Source(s) | | MAPP/REALIST/MLS/BCPA | | IMAPP/REALIST/MLS/BCPA | | IMAPP/REALIST/MLS/BCPA | |
| Verification Source(s) | | CASUAL OBSERVATION | | CASUAL OBSERVATION | | CASUAL OBSERVATION | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | | ArmLth, Convent'l | | ArmLth, Cash | | ArmLth, Cash | |
| Concessions | | NONE DISCLOSED | | NONE DISCLOSED | | NONE DISCLOSED | |
| Date of Sale/Time | | 09/23/2020 | | 07/01/2020 | | 08/31/2020 | |
| Rights Appraised | FEE SIMPLE | FEE S MPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Location | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Site | 15,750 SF/ 105 WF | 11,875 SF/ 95 WF | 0 | 13,004 SF/ 108 WF | 0 | 12,000 SF/ 100 WF | 0 |
| View | CANAL | CANAL | | CANAL | | CANAL | |
| Design (Style) | 2-STORY | 2-STORY | | 2-STORY | | 2-STORY | |
| Quality of Construction | CBS/GOOD | CBS/GOOD | | CBS/GOOD | | CBS/GOOD | |
| Age | 25 | 22 | 0 | 11 | 0 | 6 | 0 |
| Condition | AVERAGE | GOOD | -650,000 | GOOD | -650,000 | GOOD | -650,000 |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Room Count | 10 / 7 / 7.1 | 9 / 5 / 6.1 | | 8 / 4 / 4.2 | | 9 / 6 / 6.2 | |
| Gross Living Area | 7,278 sq.ft. | 6,894 sq.ft. | +57,600 | 5,792 sq.ft. | +222,900 | 6,610 sq.ft. | +100,200 |
| Basement & Finished | N/A | N/A | | N/A | | N/A | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | ADEQUATE | ADEQUATE | | ADEQUATE | | ADEQUATE | |
| Heating/Cooling | CENTRAL A/C | CENTRAL A/C | | CENTRAL A/C | | CENTRAL A/C | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Garage/Carport | 3-CAR GAR | 3-CAR GAR | | 3-CAR GAR | | 3-CAR GAR | |
| Porch/Patio/Deck | COV ENTRY | COV ENTRY | | COV ENTRY | | COV ENTRY | |
| Pool | POOL/DOCK | POOL/DOCK | 0 | POOL/DOCK | 0 | POOL/DOCK | 0 |
| DAYS ON MARKET | N/A | 88 | | 240 | | 2213 | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -592,400 | ☐ + ☒ - | $ -427,100 | ☐ + ☒ - | $ -549,800 |
| Adjusted Sale Price of Comparables | | | $ 2,607,600 | | $ 2,797,900 | | $ 2,950,200 |

**SALES COMPARISON APPROACH**

Summary of Sales Comparison Approach    SUBJECT AND COMPARABLE HOME SALES ANALYZED ARE WATERFRONT, HIGH-END, CUSTOM BUILT SINGLE FAMILY HOMES SIMILAR IN CONSTRUCTION QUALITY, LOCATED WITHIN THE SAME GATED COMMUNITY AND IN COMPETITIVE & ALTERNATIVE COMMUNITIES WHICH APPEAL TO THE SAME MARKET SEGMENT. TIME ADJUSTMENTS WERE NOT WARRANTED, AS COMPARABLE SALE DATA HAS BEEN SCARCE AND THUS, CONSIDERED TO BE INSUFFICIENT SALE DATA, SO AS TO EXTRACT RELIABLE TRENDS. CURRENT MARKET ACTIVITY WITHIN SUBJECT'S MARKET AREA WARRANTS NO ADJUSTMENT FOR LOT SIZE DIFFERENTIALS, AS SUBJECT PROPERTY AND COMPARABLE SALES HAVE SIMILAR WATER FRONTAGE. SUBJECT PROPERTY IS CURRENTLY NOT IN HABITABLE CONDITION AND THUS, HAS BEEN ADJUSTED ACCORDINGLY FOR CONDITION, BASED ON AN APPROXIMATE COST OF MAKING SUBJECT PROPERTY HABITABLE, PLUS A 30% INCENTIVE TYPICALLY REQUIRED BY ANY INVESTOR OR GENERAL CONTRACTOR IN ORDER TO UNDERTAKE SUCH WORK. GLA DIFFERENTIAL ADJUSTMENTS WERE BASED ON SENSITIVITY ANALYSIS. MARKET ACTIVITY WITHIN SUBJECT'S MARKET AREA WARRANTS NO ADJUSTMENT FOR CONSTRUCTION AGE, BEDROOM COUNT AND BATHROOM COUNT, AS THESE CHARACTERISTICS AMONGST COMPARABLE HOME SALES WITHIN SUBJECT'S MARKET SEGMENT IN SUBJECT'S MARKET AREA, DO NOT INDIVIDUALLY AFFECT PRICING. ADJUSTED COMPARABLE SALES INDICATE A RANGE OF VALUES, FOR SUBJECT PROPERTY, RANGING BETWEEN $2,607,600 AND $2,956,600. SUBJECT PROPERTY FALLS WELL WITHIN THIS RANGE, AS IS INDICATED BY HISTORICAL SALE DATA AND FURTHER SUPPORTED BY A WEIGHTED MEAN.

Indicated Value by Sales Comparison Approach $    2,800,000

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**

## ADDITIONAL COMPARABLE SALES

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 2501 Del Lago Dr Fort Lauderdale, FL 33316 | 1764 SE 9th St Fort Lauderdale, FL 33316 | | | | | |
| Proximity to Subject | | 0.53 miles NW | | | | | |
| Sale Price | $ | $ 3,550,000 | | $ | | $ | |
| Sale Price/GLA | $ /sq.ft. | $ 514.42 /sq.ft. | | $ /sq.ft. | | $ /sq.ft. | |
| Data Source(s) | | MAPP/REALIST/MLS/BCPA | | | | | |
| Verification Source(s) | | CASUAL OBSERVATION | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | | Arm,Lth, Convent'l | | | | | |
| Concessions | | NONE DISCLOSED | | | | | |
| Date of Sale/Time | | 10/08/2020 | | | | | |
| Rights Appraised | FEE SIMPLE | FEE S MPLE | | | | | |
| Location | RESIDENTIAL | RESIDENTIAL | | | | | |
| Site | 15,750 SF/ 105 WF | 12,500 SF/ 100 WF | 0 | | | | |
| View | CANAL | CANAL | | | | | |
| Design (Style) | 2-STORY | 2-STORY | | | | | |
| Quality of Construction | CBS/GOOD | CBS/GOOD | | | | | |
| Age | 25 | 19 | 0 | | | | |
| Condition | AVERAGE | GOOD | -650,000 | | | | |
| Above Grade | Total  Bdrms  Baths | Total  Bdrms  Baths | | Total  Bdrms  Baths | | Total  Bdrms  Baths | |
| Room Count | 10   7   7.1 | 9   6   6.2 | | | | | |
| Gross Living Area | 7,278 sq.ft. | 6,901 sq.ft. | +56,600 | sq.ft. | | sq.ft. | |
| Basement & Finished | N/A | N/A | | | | | |
| Rooms Below Grade | N/A | N/A | | | | | |
| Functional Utility | ADEQUATE | ADEQUATE | | | | | |
| Heating/Cooling | CENTRAL A/C | CENTRAL A/C | | | | | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | | | | |
| Garage/Carport | 3-CAR GAR | 2-CAR GAR | 0 | | | | |
| Porch/Patio/Deck | COV ENTRY | COV ENTRY | | | | | |
| Pool | POOL/DOCK | POOL/DOCK | 0 | | | | |
| DAYS ON MARKET | N/A | 253 | | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | -593,400 | ☐ + ☐ - $ | | ☐ + ☐ - $ | |
| Adjusted Sale Price | | | | | | | |
| of Comparables | | $ 2,956,600 | | $ | | $ | |
| Summary of Sales Comparison Approach | COMPARABLE SALE #4 HAS BEEN PROVIDED AS ADDITIONAL SUPPORT TO THE VALUE OPINION. | | | | | | |

*(Vertical label: SALES COMPARISON APPROACH)*

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRES2.(AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE                    3/2007

# RESIDENTIAL APPRAISAL REPORT

## COST APPROACH TO VALUE (if developed)
☒ The Cost Approach was not developed for this appraisal.

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value):

| ESTIMATED | ☐ REPRODUCTION OR | ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ |
|---|---|---|---|---|---|
| Source of cost data: | | | DWELLING | Sq.Ft. @ $ | =$ |
| Quality rating from cost service: | | Effective date of cost data: | | Sq.Ft. @ $ | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.): | | | | Sq.Ft. @ $ | =$ |
| NOT DEVELOPED DUE TO CONSTRUCTION AGE. | | | | Sq.Ft. @ $ | =$ |
| | | | | Sq.Ft. @ $ | =$ |
| | | | | | =$ |
| | | | Garage/Carport | Sq.Ft. @ $ | =$ |
| | | | Total Estimate of Cost-New | | =$ |
| | | | Less | Physical | Functional | External | |
| | | | Depreciation | | | | =$( ) |
| | | | Depreciated Cost of Improvements | | =$ |
| | | | "As-is" Value of Site Improvements | | =$ |
| | | | | | =$ |
| | | | | | =$ |
| Estimated Remaining Economic Life (if required): | | Years | INDICATED VALUE BY COST APPROACH | | =$ |

## INCOME APPROACH TO VALUE (if developed)
☒ The Income Approach was not developed for this appraisal.

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM): THE INCOME APPROACH WAS NOT DEVELOPED, AS AN ACCURATE GROSS RENT MULTIPLIER IS UNATTAINABLE DUE TO LACK OF RECENT COMPARABLE INCOME PROPERTY SALES NECESSARY TO FORMULATE A VALID GROSS RENT MULTIPLIER.

## PROJECT INFORMATION FOR PUDs (if applicable)
☐ The Subject is part of a Planned Unit Development.

Legal Name of Project:

Describe common elements and recreational facilities:

| Indicated Value by: Sales Comparison Approach $ | 2,800,000 | Cost Approach (if developed) $ | N/D | Income Approach (if developed) $ | 0 |
|---|---|---|---|---|---|

Final Reconciliation    HAVING CONSIDERED ALL PRECEDING FACTORS, GREATEST WEIGHT HAS BEEN GIVEN TO THE DIRECT SALES COMPARISON APPROACH WHICH IS CLOSER TO THE THINKING AND ACTION OF THE TYPICAL BUYER.  THE COST APPROACH WAS NOT DEVELOPED DUE TO AGE OF CONSTRUCTION.  THE INCOME APPROACH WAS NOT DEVELOPED DUE TO LACK OF RECENT COMPARABLE INCOME PROPERTY SALES NECESSARY TO FORMULATE A VALID GROSS RENT MULTIPLIER.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair:

☒ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is: $ 2,800,000 , as of: 10/14/2020 , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

## ATTACHMENTS

A true and complete copy of this report contains 16 pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:
☒ Scope of Work   ☒ Limiting Cond./Certifications   ☒ Narrative Addendum   ☒ Photograph Addenda   ☐ Sketch Addendum
☒ Map Addenda   ☒ Additional Sales   ☐ Cost Addendum   ☐ Flood Addendum   ☐ Manuf. House Addendum
☒ Hypothetical Conditions   ☒ Extraordinary Assumptions   ☐   ☐   ☐

Client Contact:          Client Name: A & S Capital
E-Mail:          Address:

## SIGNATURES

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| Appraiser Name: Miguel Muelle | Supervisory or Co-Appraiser Name: |
| Company: Reliance Appraisals & Services, Inc. | Company: |
| Phone: (786) 262-6279   Fax: (305) 740-0608 | Phone:   Fax: |
| E-Mail: muelle.miguel@gmail.com | E-Mail: |
| Date of Report (Signature): 10/19/2020 | Date of Report (Signature): |
| License or Certification #: Cert Res RD2729   State: FL | License or Certification #:   State: |
| Designation: | Designation: |
| Expiration Date of License or Certification: 11/30/2020 | Expiration Date of License or Certification: |
| Inspection of Subject: ☐ Interior & Exterior ☒ Exterior Only ☐ None | Inspection of Subject: ☐ Interior & Exterior ☐ Exterior Only ☐ None |
| Date of Inspection: 10/14/2020 | Date of Inspection: |

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP RESIDENTIAL          Form GPRES2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE          3/2007

## Supplemental Addendum

File No. 200249

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 2501 Del Lago Dr | | | | | | |
| City | Fort Lauderdale | County | BROWARD | State | FL | Zip Code | 33316 |
| Lender/Client | A & S Capital | | | | | | |

**• GP Residential: Market Area Description - Boundaries, Description, Conditions**

AREA BOUNDARIES ARE:  E LAS OLAS  BLVD TO THE NORTH, SE 17 ST TO THE SOUTH, CORDOVA RD TO THE WEST AND SEA BREEZE BLVD TO THE EAST.  SUBJECT'S AREA IS MAINLY COMPRISED OF WATERFRONT, CUSTOM BUILT, HIGH-END SINGLE FAMILY HOMES.  A GENERAL MARKET ANALYSIS OF SUBJECT'S MARKET AREA, FOR THE TWELVE MONTH PERIOD PRIOR TO THE EFFECTIVE DATE OF REPORT, REVEALED A 16% DECLINE IN THE MEDIAN SALE PRICE, BETWEEN THE 1st & 2nd HALF OF THAT SAME TIME FRAME PERIOD.  ABSORPTION RATE WITHIN SUBJECT'S MARKET AREA, IN SAID TIME FRAME PERIOD, WAS 7.42 SALES/MONTH.  CURRENT SUPPLY OF AVAILABLE INVENTORY FOR SALE IS 13.61 MONTHS.  FORECLOSURES AND SHORT SALES ARE NOT A FACTOR WITHIN SUBJECT'S MARKET AREA;  2% OF ALL SALES WERE REO'S & SHORT SALES.  AT PRESENT, 3% OF ALL SALES AVAILABLE FOR SALE, ARE REO'S & SHORT SALES.  GIVEN THE LACK OF ONE SINGLE PREDOMINANT SALE PRICE IN SUBJECT'S MARKET AREA, THE MEDIAN SALE PRICE HAS BEEN REPORTED IN THE "ONE-UNIT HOUSING" OF THE NEIGHBORHOOD SECTION OF THIS REPORT.
 AS PER THE FLORIDA REALTOR'S MONTHLY MARKET SUMMARY FOR 08/2020 BROWARD COUNTY, THE MEDIAN SALE PRICE FOR THE SINGLE FAMILY HOME MARKET INCREASED 12.5% BETWEEN 08/2019 AND 08/2020.
FINANCING IS AVAILABLE FROM A VARIETY OF SOURCES FOR QUALIFIED BUYERS.
COVID-19 AKA CORONAVIRUS:  DUE TO THE RECENT OUTBREAK OF COVID-19 (CORONAVIRUS), THE REAL ESTATE MARKET COULD EXPERIENCE A NEGATIVE IMPACT ON MARKETING TIME FRAMES AND/OR MARKET VALUES, HOWEVER, AS OF THE PRESENT TIME, NOT ENOUGH TIME HAS PASSED AND STILL PREMATURE, SO AS TO REFLECT ANY POSSIBLE MARKET REACTION TO THIS ONGOING PANDEMIC.  NONE THE LESS, THE CLIENT SHOULD BE AWARE THAT THIS ASSIGNMENT IS BASED ON HISTORIC SALE DATA IN WHICH MOST IF NOT ALL MARKET DATA WAS GENERATED BEFORE MARCH 3, 2020, DATE IN WHICH THE FEDERAL RESERVE CUT FEDERAL FUND RATES BY 0.5%.  SUBSEQUENT TO THIS RATE CUT, THE FEDERAL RESERVE CUT RATES FURTHER BY ANOTHER 1% ON MARCH 15, 2020 AND THUS, MAKING THIS PANDEMIC A REAL THREAT TO MOST HOUSING MARKET CONSUMERS.  THE MARKET SHOULD CONTINUE TO BE MONITORED FOR ANY POTENTIAL IMPACT ON MARKET TRENDS.  CURRENTLY, LOW INTEREST RATES ARE FUELING THE MARKET.



## Monthly Market Detail - August 2020
### Single Family Homes
### Broward County

**FloridaRealtors®**
The Voice for Real Estate® In Florida

| Summary Statistics | August 2020 | August 2019 | Percent Change Year-over-Year |
|---|---|---|---|
| Closed Sales | 1,672 | 1,436 | 16.4% |
| Paid in Cash | 238 | 236 | 0.8% |
| Median Sale Price | $416,000 | $369,750 | 12.5% |
| Average Sale Price | $528,622 | $452,789 | 16.7% |
| Dollar Volume | $883.9 Million | $650.2 Million | 35.9% |
| Median Percent of Original List Price Received | 97.1% | 96.0% | 1.1% |
| Median Time to Contract | 27 Days | 43 Days | -37.2% |
| Median Time to Sale | 71 Days | 84 Days | -15.5% |
| New Pending Sales | 1,836 | 1,537 | 19.5% |
| New Listings | 1,796 | 1,720 | 4.4% |
| Pending Inventory | 3,108 | 2,664 | 16.7% |
| Inventory (Active Listings) | 3,492 | 5,436 | -35.8% |
| Months Supply of Inventory | 2.8 | 4.2 | -33.3% |

**Broward**

## Closed Sales

The number of sales transactions which closed during the month

***Economists' note:*** Closed Sales are one of the simplest—yet most important—indicators for the residential real estate market. When comparing Closed Sales across markets of different sizes, we recommend comparing the percent changes in sales rather than the number of sales. Closed Sales (and many other market metrics) are affected by seasonal cycles, so actual trends are more accurately represented by year-over-year changes (i.e. comparing a month's sales to the amount of sales in the same month in the previous year), rather than changes from one month to the next.

| Month | Closed Sales | Percent Change Year-over-Year |
|---|---|---|
| Year-to-Date | 9,752 | -10.6% |
| August 2020 | 1,672 | 16.4% |
| July 2020 | 1,646 | 0.7% |
| June 2020 | 1,313 | -10.3% |
| May 2020 | 814 | -51.0% |
| April 2020 | 985 | -36.1% |
| March 2020 | 1,342 | -1.0% |
| February 2020 | 1,004 | 7.0% |
| January 2020 | 976 | 10.7% |
| December 2019 | 1,321 | 15.1% |
| November 2019 | 1,174 | 2.2% |
| October 2019 | 1,344 | 1.7% |
| September 2019 | 1,229 | 7.6% |
| August 2019 | 1,436 | -6.2% |

Produced by Florida Realtors® with data provided by Florida's multiple listing services. Statistics for each month compiled from MLS feeds on the 15th day of the following month. Data released on Tuesday, September 22, 2020. Next data release is Thursday, October 22, 2020.





**Subject Photo Page**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 2501 Del Lago Dr | | | | | | |
| City | Fort Lauderdale | County | BROWARD | State | FL | Zip Code | 33316 |
| Lender/Client | A & S Capital | | | | | | |



**Subject Front**

2501 Del Lago Dr
Sales Price
Gross Living Area        7,278
Total Rooms              10
Total Bedrooms           7
Total Bathrooms          7.1
Location                 RESIDENTIAL
View                     CANAL
Site                     15,750 SF/ 105 WF
Quality                  CBS/GOOD
Age                      25



**Subject Rear**



**Subject Street**

**Comparable Photo Page**

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 2501 Del Lago Dr | | | | | | |
| City | Fort Lauderdale | County | BROWARD | State | FL | Zip Code | 33316 |
| Lender/Client | A & S Capital | | | | | | |



### Comparable 1

2572 Lucille Dr

| | |
|---|---|
| Prox. to Subject | 0.23 miles SE |
| Sale Price | 3,200,000 |
| Gross Living Area | 6,894 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 6.1 |
| Location | RESIDENTIAL |
| View | CANAL |
| Site | 11,875 SF/ 95 WF |
| Quality | CBS/GOOD |
| Age | 22 |



### Comparable 2

2584 Lucille Dr

| | |
|---|---|
| Prox. to Subject | 0.25 miles SE |
| Sale Price | 3,225,000 |
| Gross Living Area | 5,792 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 4.2 |
| Location | RESIDENTIAL |
| View | CANAL |
| Site | 13,004 SF/ 108 WF |
| Quality | CBS/GOOD |
| Age | 11 |



### Comparable 3

341 Royal Plaza Dr

| | |
|---|---|
| Prox. to Subject | 0.76 miles N |
| Sale Price | 3,500,000 |
| Gross Living Area | 6,610 |
| Total Rooms | 9 |
| Total Bedrooms | 6 |
| Total Bathrooms | 6.2 |
| Location | RESIDENTIAL |
| View | CANAL |
| Site | 12,000 SF/ 100 WF |
| Quality | CBS/GOOD |
| Age | 6 |

**Comparable Photo Page**

| Borrower | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 2501 Del Lago Dr | | | | |
| City | Fort Lauderdale | County | BROWARD | State | FL | Zip Code | 33316 |
| Lender/Client | A & S Capital | | | | |



### Comparable 4

1764 SE 9th St

| | |
|---|---|
| Prox. to Subject | 0.53 miles NW |
| Sale Price | 3,550,000 |
| Gross Living Area | 6,901 |
| Total Rooms | 9 |
| Total Bedrooms | 6 |
| Total Bathrooms | 6.2 |
| Location | RESIDENTIAL |
| View | CANAL |
| Site | 12,500 SF/ 100 WF |
| Quality | CBS/GOOD |
| Age | 19 |

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

Location Map

| Borrower | N/A | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 2501 Del Lago Dr | | | | | | |
| City | Fort Lauderdale | County | BROWARD | State | FL | Zip Code | 33316 |
| Lender/Client | A & S Capital | | | | | | |



# Assumptions, Limiting Conditions & Scope of Work

| Property Address: | 2501 Del Lago Dr | | City: Fort Lauderdale | | State: FL | Zip Code: 33316 |
|---|---|---|---|---|---|---|
| Client: | A & S Capital | Address: | | | | |
| Appraiser: | Miguel Muelle | Address: | P.O.BOX 560305, MIAMI, FL 33256-0305 | | | |

**STATEMENT OF ASSUMPTIONS & LIMITING CONDITIONS**

– The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

– The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements, and any such sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size. Unless otherwise indicated, a Land Survey was not performed.

– If so indicated, the appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

– The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

– If the cost approach is included in this appraisal, the appraiser has estimated the value of the land in the cost approach at its highest and best use, and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used. Unless otherwise specifically indicated, the cost approach value is not an insurance value, and should not be used as such.

– The appraiser has noted in the appraisal report any adverse conditions (including, but not limited to, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property, or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property, or adverse environmental conditions (including, but not limited to, the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

– The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

– The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

– If this appraisal is indicated as subject to satisfactory completion, repairs, or alterations, the appraiser has based his or her appraisal report and valuation conclusion on the assumption that completion of the improvements will be performed in a workmanlike manner.

– An appraiser's client is the party (or parties) who engage an appraiser in a specific assignment. Any other party acquiring this report from the client does not become a party to the appraiser–client relationship. Any persons receiving this appraisal report because of disclosure requirements applicable to the appraiser's client do not become intended users of this report unless specifically identified by the client at the time of the assignment.

– The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public, through advertising, public relations, news, sales, or by means of any other media, or by its inclusion in a private or public database.

– An appraisal of real property is not a 'home inspection' and should not be construed as such. As part of the valuation process, the appraiser performs a non–invasive visual inventory that is not intended to reveal defects or detrimental conditions that are not readily apparent. The presence of such conditions or defects could adversely affect the appraiser's opinion of value. Clients with concerns about such potential negative factors are encouraged to engage the appropriate type of expert to investigate.

The Scope of Work is the type and extent of research and analyses performed in an appraisal assignment that is required to produce credible assignment results, given the nature of the appraisal problem, the specific requirements of the intended user(s) and the intended use of the appraisal report. Reliance upon this report, regardless of how acquired, by any party or for any use, other than those specified in this report by the Appraiser, is prohibited. The Opinion of Value that is the conclusion of this report is credible only within the context of the Scope of Work, Effective Date, the Date of Report, the Intended User(s), the Intended Use, the stated Assumptions and Limiting Conditions, any Hypothetical Conditions and/or Extraordinary Assumptions, and the Type of Value, as defined herein. The appraiser, appraisal firm, and related parties assume no obligation, liability, or accountability, and will not be responsible for any unauthorized use of this report or its conclusions.

Additional Comments (Scope of Work, Extraordinary Assumptions, Hypothetical Conditions, etc.):

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

## Certifications

| | |
|---|---|
| Main File No. 200249 | Page # 14 of 16 |

File No.: 200249

| | | | | | |
|---|---|---|---|---|---|
| Property Address: | 2501 Del Lago Dr | City: | Fort Lauderdale | State: FL | Zip Code: 33316 |
| Client: | A & S Capital | Address: | | | |
| Appraiser: | Miguel Muelle | Address: | P.O.BOX 560305, MIAMI, FL 33256-0305 | | |

**APPRAISER'S CERTIFICATION**

I certify that, to the best of my knowledge and belief:
– The statements of fact contained in this report are true and correct.
– The credibility of this report, for the stated use by the stated user(s), of the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
– I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
– Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three–year period immediately preceding acceptance of this assignment.
– I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
– My engagement in this assignment was not contingent upon developing or reporting predetermined results.
– My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
– My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
– I did not base, either partially or completely, my analysis and/or the opinion of value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property, or of the present owners or occupants of the properties in the vicinity of the subject property.
– Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
– Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification.

**Additional Certifications:**

**DEFINITION OF MARKET VALUE *:**
Market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:
1. Buyer and seller are typically motivated;
2. Both parties are well informed or well advised and acting in what they consider their own best interests;
3. A reasonable time is allowed for exposure in the open market;
4. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.
* This definition is from regulations published by federal regulatory agencies pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989 between July 5, 1990, and August 24, 1990, by the Federal Reserve System (FRS), National Credit Union Administration (NCUA), Federal Deposit Insurance Corporation (FDIC), the Office of Thrift Supervision (OTS), and the Office of Comptroller of the Currency (OCC). This definition is also referenced in regulations jointly published by the OCC, OTS, FRS, and FDIC on June 7, 1994, and in the Interagency Appraisal and Evaluation Guidelines, dated October 27, 1994.

| | | | |
|---|---|---|---|
| Client Contact: | | Client Name: | A & S Capital |
| E-Mail: | | Address: | |

**SIGNATURES**

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| Appraiser Name: Miguel Muelle | Supervisory or Co-Appraiser Name: |
| Company: Reliance Appraisals & Services, Inc. | Company: |
| Phone: (786) 262-6279   Fax: (305) 740-0608 | Phone:   Fax: |
| E-Mail: muelle.miguel@gmail.com | E-Mail: |
| Date Report Signed: 10/19/2020 | Date Report Signed: |
| Licence or Certification #: Cert Res RD2729   State: FL | Licence or Certification #:   State: |
| Designation: | Designation: |
| Expiration Date of License or Certification: 11/30/2020 | Expiration Date of License or Certification: |
| Inspection of Subject: ☐ Interior & Exterior ☒ Exterior Only ☐ None | Inspection of Subject: ☐ Interior & Exterior ☐ Exterior Only ☐ None |
| Date of Inspection: 10/14/2020 | Date of Inspection: |

Main File No. 200249    Page # 15 of 16

# USPAP ADDENDUM

File No. 200249

| | |
|---|---|
| Borrower | N/A |
| Property Address | 2501 Del Lago Dr |
| City | Fort Lauderdale |
| County | BROWARD |
| State | FL |
| Zip Code | 33316 |
| Lender | A & S Capital |

**This report was prepared under the following USPAP reporting option:**

☐ Appraisal Report — This report was prepared in accordance with USPAP Standards Rule 2-2(a).

☐ Restricted Appraisal Report — This report was prepared in accordance with USPAP Standards Rule 2-2(b).

**Reasonable Exposure Time**

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is: _____

**Additional Certifications**

I certify that, to the best of my knowledge and belief:

☐ I have NOT performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

☐ I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**Additional Comments**

| APPRAISER: | SUPERVISORY APPRAISER: (only if required) |
|---|---|
| Signature: | Signature: |
| Name: Miguel Muelle | Name: |
| Date Signed: 10/19/2020 | Date Signed: |
| State Certification #: Cert Res RD2729 | State Certification #: |
| or State License #: | or State License #: |
| State: FL | State: |
| Expiration Date of Certification or License: 11/30/2020 | Expiration Date of Certification or License: |
| Effective Date of Appraisal: 10/14/2020 | Supervisory Appraiser Inspection of Subject Property: |
| | ☐ Did Not   ☐ Exterior-only from Street   ☐ Interior and Exterior |



RICK SCOTT, GOVERNOR

JONATHAN ZACHEM, SECRETARY



## STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

### FLORIDA REAL ESTATE APPRAISAL BD

THE CERTIFIED RESIDENTIAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

## MUELLE, MIGUEL

7745 SW 143 STREET
PALMETTO BAY        FL 33158

LICENSE NUMBER: RD2729

EXPIRATION DATE: NOVEMBER 30, 2020

Always verify licenses online at MyFloridaLicense.com



Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.